POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

*Counsel for Movant Wrap Investor*
*Group and Proposed Lead*
*Counsel for the Class*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Wrap Technologies, Inc. Securities Exchange Act Litigation | Case No. CV 20-8760-DMG (PVCx)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE WRAP INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL<br><br>DATE:  January 8, 2021<br>TIME:  9:30 a.m.<br>JUDGE:  Dolly M. Gee<br>CTRM:  8C |

MEMORANDUM OF POINTS AND AUTHORITIES

# **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ........................................................................1

II.     STATEMENT OF FACTS .............................................................................2

III.    ARGUMENT ...............................................................................................6

    A.    THE WRAP INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF ........................................................................................6

        1.    The Wrap Investor Group Is Willing to Serve as Class Representative .....................................................................................7

        2.    The Wrap Investor Group Has the "Largest Financial Interest".........8

        3.    The Wrap Investor Group Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure............................9

        4.    The Wrap Investor Group Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses ... 14

    B.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ..............................................................................................14

IV.    CONCLUSION...........................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnet v. Elan Corp., PLC*,
    236 F.R.D. 158 (S.D.N.Y. 2005) ............................................................................ 12

*Bruce v. Suntech Power Holdings Co., Ltd.*,
    2012 U.S. Dist. LEXIS 167702 (N.D. Cal. Nov. 13, 2012) ........................................ 13

*Deinnocentis v. Dropbox, Inc.*, 19-CV-06348-BLF,
    2020 WL 264408 (N.D. Cal. Jan. 16, 2020) .............................................................. 10

*Harari v. PriceSmart, Inc.*, 19-CV-958 JLS (LL),
    2019 WL 4934277 (S.D. Cal. Oct. 7, 2019) ............................................................. 11

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
    2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017) ....................................................... 12, 13

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ................................................................................. 10

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d. Cir. 2001) ................................................................................ 12

*In re Comverse Tech., Inc., Sec. Litig.*,
    2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ............................................. 9

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp.2d 286 (E.D.N.Y. 1998) .......................................................................... 9

*Karinski v. Stamps.com, Inc.*, CV 19-1828-R,
    2019 WL 8013753 (C.D. Cal. June 5, 2019) ............................................................ 11

*Knox v. Yingli Green Energy Holding Co.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ..................................................................... 9

*La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
    2012 U.S. Dist. LEXIS 89192 (D. Vt. Apr. 27, 2012) ............................................... 13

*Lax v. First Merch. Acceptance Corp.*,
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) .............................................. 8

*Osher v. Guess ?, Inc.*,
    2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ............................................... 14

*Perrin v. Southwest Water Co.*,
    2009 U.S. Dist. LEXIS 134154 (C.D. Cal. Feb. 12, 2009) ................................... 12, 13

*Richardson v. TVIA, Inc.*, C 06 06304 RMW,
    2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ....................................................... 9

*Robb v. Fitbit Inc.*,
    2016 U.S. Dist. LEXIS 62457 (N.D. Cal. May 10, 2016) ................................... 11, 13

*Vataj v. Johnson*, 19-CV-06996-HSG,
    2020 WL 532981 (N.D. Cal. Feb. 3, 2020) ............................................................. 10

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) .......................................................................... 12

*West Palm Beach Police Pension Fund v. DFC Global Corp.*,
    2014 U.S. Dist. LEXIS 49595 (E.D. Pa. Apr. 9, 2014) ........................................ 13

### Statutes

15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii) ............................................................................. 7

15 U.S.C. § 78u-4(a)(3)(B)(iii) ................................................................................ 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .......................................................................... 2, 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ..................................................................... 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ........................................................................ 14

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) .................................................................. 14

15 U.S.C. § 78u-4(a)(3)(B)(v) ......................................................................... 11, 14

### Rules

Federal Rules of Civil Procedure Rule 23 ...............................................................*passim*

MEMORANDUM OF POINTS AND AUTHORITIES

iii

Movants Maritza Jimenez and Joseph Mercurio (collectively, the "Wrap Investor Group") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing the Wrap Investor Group as Lead Plaintiff on behalf of all investors who purchased or otherwise acquired Wrap Technologies, Inc. ("Wrap" or the "Company") securities between April 29, 2020 and September 23, 2020, inclusive (the "Class Period") (the "Class"); and (2) approving Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.[1]

## I.   PRELIMINARY STATEMENT

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant who possesses the largest financial interest in the outcome of the above-captioned consolidated action ("Consolidated Action") and who satisfies the requirements of Rule

---

[1] The complaint in the first of the actions comprising the Consolidated Action to be filed, styled *Carone Cobden v. Wrap Technologies, Inc. et al*, No. 2:20-cv-08760 (C.D. Cal.) (the "Cobden Action"), was filed in this Court on September 23, 2020, alleging a class period extending from July 31, 2020 through September 23, 2020, both dates inclusive.  On October 1, 2020, a related action styled *Joseph Mercurio v. Wrap Technologies, Inc. et al*, No. 2:20-cv-09030 (C.D. Cal.) ("Mercurio Action") was filed in this Court alleging substantially the same wrongdoing against overlapping defendants, and alleging the same class period as the Cobden Action.  *See* Mercurio Action, Dkt. No. 1.  On October 15, 2020, a related action styled *Paula Earley v. Wrap Technologies, Inc. et al*, No. 2:20-cv-09444 (C.D. Cal.) ("Earley Action") was filed in this Court alleging substantially the same wrongdoing against overlapping defendants, but with a larger class period extending from April 29, 2020 through September 23, 2020, both dates inclusive.  *See* Earley Action, Dkt. No. 1. Therefore, to avoid excluding any potential class members, this motion has adopted the larger class period alleged in the Earley Action.

MEMORANDUM OF POINTS AND AUTHORITIES

23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The Wrap Investor Group, having incurred losses of approximately $4,148 in connection with its purchases of Wrap securities, has the largest financial interest in the relief sought in the Consolidated Action to its knowledge. *See* Declaration of Jennifer Pafiti in Support of Motion ("Pafiti Decl."), Exhibit ("Ex.") A. The Wrap Investor Group further satisfies the requirements of Rule 23 because it is an adequate representative with claims typical of the other Class members. Accordingly, the Wrap Investor Group respectfully submits that it should be appointed Lead Plaintiff.

## II. STATEMENT OF FACTS

Wrap purports to develop security products for law enforcement and security personnel, including the BolaWrap 100, a hand-held remote restraint device that discharges an eight-foot bola style Kevlar tether to entangle a subject at a range of 10-25 feet.

On December 3, 2019, Wrap announced that the Los Angeles Police Department ("LAPD") had decided to train its officers on the BolaWrap and employ 200 devices in the field for a trial, pilot program.

Throughout the Class Period, Defendants misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to

disclose that: (1) the Company had concealed the results of the LAPD BolaWrap pilot program, which demonstrated that the BolaWrap was ineffective, expensive, and sparingly used in the field; and (2) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

On September 23, 2020, while the market was open, White Diamond Research published a report entitled "Wrap Technologies: Disastrous LAPD BolaWrap Pilot Program Results, No Evidence These Have Been Communicated To Investors" alleging, among other things, that the Company's trial pilot program with the LAPD was a disaster, and that the Company had not disclosed the results to investors. The report stated, in relevant part:

> ***The LAPD BolaWrap Pilot Program Results Have Been Revealed – And It Is Ugly***
>
> The LAPD and the respective BolaWrap trials have been a common theme in WRTC presentations since December 2019. The company's management has seemingly failed to disclose, however, a key milestone failure from an LAPD report filed after the six-month trial program finished on 8/25/20. We found this report through our continued research on the company. There isn't any evidence that company executives have referenced or mentioned the LAPD report. This is the only comprehensive in-field study that has been done on the BolaWrap. So why haven't the results been released to investors? It's bad news.
>
> Over a six-month period, 200 BolaWrap devices in the hands of 1,100 LAPD officers in the field were only used nine times, and only worked once. On an annualized basis, this comes to each BolaWrap is only used 0.09 times per year. Or, once every 11 years. At least 191 BolaWraps weren't used at all in the pilot program, they were just sitting there collecting dust. We believe this was about the worst result that could've happened from the

MEMORANDUM OF POINTS AND AUTHORITIES

3

program. The only way it could've been worse, is if the BolaWrap didn't work at all.

This was an important pilot program, that will be looked at by potential large police departments. The following statements by WRTC management illustrate how much time, expense, and training was put into the LAPD pilot program.

* * *

***An Analysis Of The LAPD BolaWrap Pilot Trial Results***

The LAPD BolaWrap pilot program results can be found here. It's dated 8/25/20 from the Chief of Police to the Board of Police Commissioners. The program reviewed was from 2/5/20 until 8/10/20. It states:

the BolaWrap has been utilized nine times. Due to an insufficient sample size, an additional 180 days is needed in order to evaluate the effectiveness of the device.

The nine incidents of utilization are described in the report. It says that the number of incidents where the device was effective was six times. But looking at it closely, the BolaWrap did what it's supposed to do, as shown in the WRTC demonstration videos, only once.

Analyzing each of the incidents:

1. A naked man was running in and out of traffic. The BolaWrap was deployed, it hit him in the legs but didn't wrap. This made the suspect take a fighting stance. An officer deployed his baton on the suspect, and he was taken into custody without further incident. This incident is marked as "effective" but it really wasn't. It didn't wrap around and disable the suspect but in fact made him more hostile as he took a fighting stance. The officer had to use force with his baton, which could've been used without the BolaWrap and likely end up with the same result.

2. A call came in to report a male with a mental illness. The BolaWrap wrapped around the suspect but he was wearing a "puffy jacket" and he immediately pulled his arms free. This incident was marked "ineffective".

3. A call came in to report an ADW (Assault with a Deadly Weapon) suspect. Officers observed the suspect with a pipe in his hands. The officers told the suspect to drop it, but he wouldn't comply. First, the 40mm Less-Lethal Launcher was used to strike the suspect but had no effect. Then the BolaWrap was deployed at the suspect's legs. It didn't wrap around his legs, but the suspect immediately complied afterwards. This incident was marked "effective" because no additional force was needed after the BolaWrap was deployed. But again, it wasn't really effective because it didn't do what it's supposed to do, which is wrap around a suspect.

4. A call came in to report an ADW suspect with a knife. The suspect failed to comply with officers' commands. The BolaWrap was deployed at the suspect's legs and successfully wrapped around him, stopping his advancement. This was the only time out of these nine utilizations that the BolaWrap successfully "wrapped" a suspect.

5. Officers were in pursuit of a suspect. The BolaWrap was shot at the suspect's legs. Again, it didn't wrap around the suspect's legs, but it startled the suspect and he was taken into custody. This was marked "effective", but in our opinion it wasn't. Again, the BolaWrap didn't work like it's supposed to - it didn't wrap.

6. A man was disturbing the peace. The BolaWrap was deployed at the suspect's legs. It hit the suspect's legs but didn't wrap around it completely, and he stepped out of the tether. The officers then utilized a team takedown to take the suspect into custody. This was marked "effective" as it stopped the suspect from walking away. This is more effective than the other times, because he had to actually step out of the tether, which slowed him down. But still, it didn't wrap completely around his legs.

7. A call came in of an arson suspect. The BolaWrap was deployed at the suspect's legs, it hit him in the knee but didn't wrap. He was stunned by the impact, and was taken into custody without further incident. Because there wasn't further incident, it was marked effective, but in reality it was another fail.

8. A call came in of a family dispute. The suspect was armed with a large stick. The BolaWrap was shot at his arms, but didn't wrap, possibly because it hit a fence behind the suspect. The officers then utilized a 40mm Less Lethal Launcher and the suspect was taken into custody. This was marked as

MEMORANDUM OF POINTS AND AUTHORITIES

5

ineffective because it didn't wrap and another tool was necessary to take the suspect into custody.

9. A suspect refused to comply with officers' orders and the BolaWrap was deployed. It missed the suspect. Therefore, it was deemed ineffective.

On this news, securities of Wrap fell $2.07 per share, or 25.43% to close at $6.07 per share on September 23, 2020, damaging investors.

The Cobden Action was filed against Defendants in this District on September 23, 2020. *See* Dkt. No. 1. On October 1, 2020, the Mercurio Action was filed against Defendants in this District. *See* Mercurio Action, Dkt. No. 1. On October 15, 2020, the Earley Action was filed against Defendants in this District. *See* Earley Action, Dkt. No. 1.

The Cobden Action, Mercurio Action, and Earley Action were thereafter deemed related and subsequently consolidated into the Consolidated Action by this Court's Order, dated November 3, 2020. *See* Dkt. No. 19.

## III.   ARGUMENT

### A.   THE WRAP INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

The Wrap Investor Group should be appointed Lead Plaintiff because, to its knowledge, it has the largest financial interest in the Consolidated Action and otherwise meets the requirements of Rule 23. Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of a lead plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as lead

plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.  Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
>  (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the Wrap Investor Group satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1.     The Wrap Investor Group Is Willing to Serve as Class Representative

On September 23, 2020, counsel for plaintiff in the Cobden Action, the first of the actions comprising the Consolidated Action to be filed, caused a notice to be published

over *PRNewswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "Notice"), which announced that a securities class action had been filed against Defendants, and advised investors of Wrap securities that they had until November 23, 2020—*i.e.*, 60 days—to file a motion to be appointed as Lead Plaintiff. *See* Pafiti Decl., Ex. B.

The Wrap Investor Group has filed the instant motion pursuant to the Notice and has attached Certifications signed by its members attesting that it is willing to serve as representative for the Class and to provide testimony at deposition and trial, if necessary. *See* Pafiti Decl., Ex. C. Accordingly, the Wrap Investor Group satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2.      The Wrap Investor Group Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

As of the time of the filing of this motion, the Wrap Investor Group believes that it has the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merch. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *7-*8 (N.D. Ill. Aug. 6, 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended

during the class period; and (4) the approximate losses suffered).[2]  The most critical among the Lax-Olsten Factors is the approximate loss suffered.  *See, e.g.*, *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015); *Richardson v. TVIA, Inc.*, C 06 06304 RMW, 2007 WL 1129344, at \*4 (N.D. Cal. Apr. 16, 2007).

During the Class Period, the Wrap Investor Group: (1) purchased 500 shares of Wrap common stock and 40 call option contracts; (2) expended $7,938 on its purchases; (3) retained 500 shares of common stock and 10 call options; and (4) as a result of the disclosures of the fraud, suffered a loss of $4,148 in connection with its purchases.  *See* Pafiti Decl., Ex. A.  Because the Wrap Investor Group possesses the largest financial interest in the outcome of this litigation, it may be presumed to be the "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. The Wrap Investor Group Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

---

[2] *See also In re Olsten Corp. Sec. Litig.*, 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at \*22-\*25 (E.D.N.Y. Mar. 2, 2007) (collectively, the "Lax-Olsten" factors).

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *In re Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002). Moreover, at this stage "courts need only consider typicality and adequacy." *Deinnocentis v. Dropbox, Inc.*, 19-CV-06348-BLF, 2020 WL 264408, at *4 (N.D. Cal. Jan. 16, 2020).

The typicality requirement of Rule 23(a)(3) is satisfied where the named representative's claims have the same essential characteristics as the claims of the class at large. *Vataj v. Johnson*, 19-CV-06996-HSG, 2020 WL 532981, at *3 (N.D. Cal. Feb. 3, 2020).

The claims of the Wrap Investor Group are typical of those of the Class. The Wrap Investor Group alleges, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Wrap, or omitted to state material facts necessary to make the statements they did make not misleading. The Wrap Investor Group, as did all members of the Class, purchased Wrap securities during the

Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that the representative party "will fairly and adequately protect the interests of the class." *Karinski v. Stamps.com, Inc.*, CV 19-1828-R, 2019 WL 8013753, at \*1 (C.D. Cal. June 5, 2019). The class representative must also have a sufficient interest in the outcome of the case to ensure vigorous advocacy. *Harari v. PriceSmart, Inc.*, 19-CV-958 JLS (LL), 2019 WL 4934277, at \*3 (S.D. Cal. Oct. 7, 2019).

The Wrap Investor Group is an adequate representative for the Class. There is no antagonism between the interests of the Wrap Investor Group and those of the Class, and its losses demonstrate that it has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy. Additionally, the Wrap Investor Group has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Consolidated Action, and submits its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

Moreover, the Wrap Investor Group constitutes an appropriate group of the type routinely appointed to serve as Lead Plaintiffs. *See, e.g.*, *Robb v. Fitbit Inc.*, 2016 U.S.

Dist. LEXIS 62457, at *13-*14 (N.D. Cal. May 10, 2016) (appointing five-person investor group as lead plaintiff); *Perrin v. Southwest Water Co.*, 2009 U.S. Dist. LEXIS 134154, at *13 (C.D. Cal. Feb. 12, 2009) ("[c]ourts have generally held that small and manageable groups serving as lead plaintiffs do not frustrate Congress' desire to ensure that investors, rather than lawyers, control securities litigation."); *In re Blue Apron Holdings, Inc. Sec. Litig.,*, 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding that a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding that "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiff); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d. Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff") (citation omitted).

The Wrap Investor Group likewise has demonstrated its adequacy because it is a small and cohesive group of two investors, who have submitted a Joint Declaration attesting to, *inter alia*, their backgrounds, their investing experience, their understanding of the responsibilities of a lead plaintiff pursuant to the PSLRA, their decision to seek appointment jointly as co-lead plaintiffs, and the steps that each of them are prepared to take to cooperatively prosecute this litigation on behalf of the Class. *See* Pafiti Decl.,

Ex. D.    Courts routinely appoint investor groups as lead plaintiff under such circumstances. *See, e.g.*, *Fitbit*, 2016 U.S. Dist. LEXIS 62457, at \*13-\*14 (appointing as lead plaintiff a group of five unrelated investors that submitted a joint declaration "stat[ing] that the individual members have discussed the responsibilities of acting as lead plaintiff, will stay in regular communication with counsel and with each other, and will make decisions by consensus, using a majority vote as a back-stop"); *Bruce v. Suntech Power Holdings Co., Ltd.*, 2012 U.S. Dist. LEXIS 167702, at \*9 (N.D. Cal. Nov. 13, 2012) (appointing as lead plaintiff a group of three unrelated investors that "submitted a joint declaration attesting that each is knowledgeable about the litigation, that they are working together, and that they are committed to protecting the interests of the Class"); *Southwest Water*, 2009 U.S. Dist. LEXIS 134154, at \*13 (appointing as lead plaintiff a group of four investors that "submitted a Joint Declaration agreeing to 'work together to ensure the maximum recovery on behalf of the proposed class.'").[3]

---

[3] *See also Blue Apron*, 2017 WL 6403513, at \*4 (appointing group of four unrelated investors that submitted declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding that the group is not "so large as to be unwieldy and impracticable"); *West Palm Beach Police Pension Fund v. DFC Global Corp.*, 2014 U.S. Dist. LEXIS 49595, at \*7 (E.D. Pa. Apr. 9, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, 2012 U.S. Dist. LEXIS 89192, at \*11 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

MEMORANDUM OF POINTS AND AUTHORITIES

13

**4.** **The Wrap Investor Group Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses**

The presumption in favor of appointing the Wrap Investor Group as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The ability and desire of the Wrap Investor Group to fairly and adequately represent the Class has been discussed above. The Wrap Investor Group is not aware of any unique defenses Defendants could raise that would render it inadequate to represent the Class.

**B.** **LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, 2001 U.S. Dist. LEXIS 6057, at \*15 (C.D. Cal. Apr. 26, 2001). The Court should interfere with Lead Plaintiff's selection only when necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The Wrap Investor Group has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and

has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume. Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. *See* Pafiti Decl., Ex. E. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010. *See id.* Most recently, Pomerantz announced as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors that it has reached a $110 million settlement with the company. *See id.*

As a result of Pomerantz's extensive experience in litigation involving issues similar to those raised in this Consolidated Action, the Wrap Investor Group's counsel have the skill and knowledge which will enable them to prosecute the Consolidated Action effectively and expeditiously. Thus, the Court may be assured that by approving the selection of Lead Counsel by the Wrap Investor Group, the members of the Class will receive the best legal representation available.

## IV. CONCLUSION

For the foregoing reasons, the Wrap Investor Group respectfully requests that the Court issue an Order: (1) appointing the Wrap Investor Group as Lead Plaintiff for the Class; and (2) approving Pomerantz as Lead Counsel for the Class.

Dated:  November 23, 2020                    POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

*Counsel for Movant Wrap Investor Group
and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Movant Wrap
Investor Group*

MEMORANDUM OF POINTS AND AUTHORITIES

16

CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


*/s/ Jennifer Pafiti*
Jennifer Pafiti