Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
lrosen@rosenlegal.com

Phillip Kim, Esq. (pro hac vice pending)
**THE ROSEN LAW FIRM, P.A.**
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
pkim@rosenlegal.com

*[Proposed] Lead Counsel for*
*Plaintiff and the Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| In re Wrap Technologies, Inc. Securities Exchange Act Litigation | No. 2:20-cv-08760-DMG (PVCx) |
|---|---|
| | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF TIMOTHY O'HERN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION** |
| | CLASS ACTION |
| | Judge: Hon. Dolly M. Gee |
| | Hearing Date: January 8, 2021 |
| | Time: 9:30 a.m. |
| | Ctrm:  8C – First Street Courthouse |

Movant Timothy O'Hern ("Mr. O'Hern") respectfully submits this reply memorandum of points and authorities in further support of his motion for appointment as Lead Plaintiff of the Class and approval of his selection of The Rosen Law Firm ("Rosen Law") as Lead Counsel for Lead Plaintiff and the Class (Dkt. No. 23); and in opposition to the competing motion of Greg Naj ("Mr. Naj[jar]") (Dkt. No. 28).

## I.    PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff" is the movant with the "largest financial interest" in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). While the PSLRA does not define "financial interest," the majority of courts in this Judicial District, the Ninth Circuit, and nationwide have equated financial interest with monetary loss incurred as a result of the alleged fraud. *See*, *e.g.*, *Kinney v. Capstone Turbine Corp.*, 2016 WL 5341948, at *2-3 (C.D. Cal. Feb. 29, 2016) (Gee, J.) (considering losses of movants in determining largest financial interest); *Ferreira v. Funko, Inc.*, 2020 WL 3246328, at *5 (C.D. Cal. June 11, 2020); *Brown v. China Integrated Energy, Inc.*, 2:11-cv-02559 MMM (PLAx), Dkt. No. 43, at *12-14 (C.D. Cal. Aug. 29, 2011); *Doherty v. Pivotal Software, Inc.*, 2019 WL 5864581, at *5 (N.D. Cal. Nov. 8, 2019); *In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*, 2005 WL 627960, at *4-5 (N.D. Ill. Mar. 15, 2005).

Mr. O'Hern clearly has the largest financial interest. Mr. O'Hern lost $44,276.43, whereas Mr. Naj[jar] lost only $38,291.98. Possessing the largest financial interest and otherwise satisfying the adequacy and typicality requirements of Rule 23 (a point that Mr. Naj[jar] has not disputed), Mr. O'Hern is the presumptive "most adequate plaintiff" within the meaning of the PSLRA.

In opposition, Mr. Naj[jar] advances arguments that are both at odds with PSLRA jurisprudence and inconsistent with his opening papers. First, Mr. Naj[jar] urges the Court to elevate other financial metrics—funds expended, shares purchased, and net shares purchased (*i.e.*, retained shares) (collectively with loss, the "*Olsten-Lax* factors" or "*Olsten* factors")—over monetary loss in assessing financial interest. However, as stated above, the majority of courts reject this approach, finding that "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period. The inquiry need not and should not be complicated by also considering the number of shares or the net expenditures involved because ***those statistics do not advance the ball***." *Bally Total Fitness*, 2005 WL 627960, at *4 (emphasis added).

Second, Mr. Naj[jar] advances for the first time in opposition, a so-called "*Dura Loss*" calculation[1] where the stock price declines from corrective disclosures are added together and multiplied to the net shares purchased, irrespective of purchase price. (Dkt. No. 50, n. 7 at 5). Cloaking this unorthodox approach as *Dura Loss* does not save it. "Mr.

---

[1] Referring to *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005)

[Najjar]'s new loss model—which renders purchase price irrelevant—is inconsistent with the statutory scheme and with *Dura* itself.  As … the PSLRA provides for a statutory cap on damages that is calculated based on the 'difference between the purchase price or sale price paid …' Given the statutory scheme, it would be odd to apply a loss model that precludes any reference to purchase price." *Sallustro v. CannaVest Corp.*, 93 F.Supp.3d 265, 276 (S.D.N.Y. Mar. 19, 2015) (internal citation omitted). "Moreover, *Dura* mandates no such approach." *Id.* "*Dura* merely holds that, in fraud-on-the-market cases, 'an inflated purchase price will not itself constitute or proximately cause the relevant economic loss.'" *Id.* (quoting *Dura Pharm. v. Broudo*, 544 U.S. 336, 342 (2005)). "But in holding that a plaintiff must plead loss causation – *i.e.*, a sale or retention of stock after a corrective disclosure – the Supreme Court did not rule that purchase price is irrelevant." *Id.* "To the contrary, the Supreme Court repeatedly states that purchase price might prove relevant to loss analysis." *Id.* (citing *Dura*, 544 U.S. at 343). "In sum, *Dura* does not state that purchase price plays no role in loss analysis, nor does its logic require such an approach." *Id.* at 277.

Third, after having reviewed Mr. O'Hern's motion papers, Mr. Naj[jar] has now taken positions in opposition—including, *inter alia*, with respect to the appropriate measure of financial interest and the means in calculating losses—that are inconsistent with his arguments regarding financial interest in his opening papers.

MEMORANDUM OF POINTS AND AUTHORITIES – 2:20-cv-08760-DMG (PVCx)

3

Courts routinely reject such transparent attempts by lead plaintiff movants to move the goalposts by positing new financial interest calculations for the first time only *after* reviewing competing motion papers and identifying a perceived advantage to doing so. *See*, *e.g.*, *Cook v. Allergan PLC*, 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019) (denying motion where movant "used the same methodology as [competing movant] in its original moving papers—only to alter its calculation when it learned that someone else had a larger loss."); *Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *4 (denying motion by movant who "[t]ellingly . . . made no reference to net shares purchased or a retained shares calculation in its opening motion seeking appointment as lead plaintiff, shifting its argument only *after* [a competing movant] came forward with larger LIFO losses.") (emphasis added). *Sallustro*, 93 F.Supp.3d at 276 (rejecting the use of a similar *Dura Loss* calculations raised for the first time in opposition).

Accordingly, for the reasons set forth herein and in his moving and opposition briefs (Dkt. Nos. 24, 49), Mr. O'Hern respectfully requests that the Court grant his motion in its entirety and deny the competing motion of Mr. Naj[jar].

## II. ARGUMENT

### A. Mr. O'Hern Has the Largest Financial Interest

#### 1. Mr. O'Hern Has the Largest Loss

Mr. O'Hern has the "largest financial interest" because he lost $44,276.43 and Mr. Naj[jar] lost $38,291.98. Courts consider the *Olsten-Lax* factors in assessing financial

interest: (1) net expenditure, (2) gross shares purchased, (3) retained shares, and (4) loss—and almost universally equate financial interest with the fourth factor, monetary loss, for purposes of lead plaintiff appointment pursuant to the PSLRA. *See*, *e.g.*, *Kinney* 2016 WL 5341948, at \*1-2 (equating financial interest with monetary loss) *Ferreira*, 2020 WL 3246328, at \*5 (same); *Brown*, 2:11-cv-02559, Dkt. No. 43 at \*12-14 (same); *Doherty*, 2019 WL 5864581, at \*5 ("Of the four Olsten-Lax factors, courts in the Ninth Circuit consider the fourth factor, approximate losses suffered, the most determinative."); *Robb v. Fitbit Inc.*, 2016 WL 2654351, at \*3 (N.D. Cal. May 10, 2016) (the "most important Olsten-Lax factor is the financial loss suffered"); *Nicolow*, 2013 WL 792642, at \*4 (same).

Mr. Naj[jar]'s opposition brief attempts to deemphasize the significance of monetary loss, arguing instead that the Court should place greater weight on the other three *Olsten-Lax* factors. As set forth in greater detail below, Mr. O'Hern respectfully submits that the Court should not credit Mr. Naj[jar]'s arguments on this point, considering that his opening brief focused solely on loss and made no reference to net expenditure, gross shares purchased, or retained shares. (Dkt. No. 29, at 6). Even considering *arguendo* Mr. Naj[jar]'s newly adopted assertions, his arguments are at odds with PSLRA jurisprudence. The purpose of the PSLRA's "largest financial interest" criterion is to ensure the appointment of an investor with sufficiently "significant losses [to] provide it with the incentive to actively represent the class in obtaining a recovery." *Armour v. Network Assocs.*, 171 F. Supp. 2d 1044, 1051 (N.D. Cal. 2001). *See also Sutterfield v. Micromuse,*

*Inc.*, 2004 WL 6058065, at \*10 (N.D. Cal. July 6, 2004) ("[H]aving suffered the largest financial loss asserted, [movant] would have a strong incentive to pursue this action vigorously."). This is ***precisely*** why courts find the dispositive financial interest factor to be "***the amount of loss, period.  The inquiry need not and should not be complicated by also considering the number of shares or the net expenditures involved because those statistics do not advance the ball.***" *Bally Total Fitness*, 2005 WL 627960, at \*4 (emphasis added).  Mr. Naj[jar] has offered no reason why the Court should depart from this well-settled rule in this instance.

Mr. Naj[jar]'s cases are off the mark.  In *Pio v. Gen. Motors Co.*, 2014 WL 5421230 (E.D. Mich. Oct. 24, 2014) the court afforded equal weight to all four *Olsten-Lax* factors because the lead plaintiff movants engaged in "accounting gymnastics" by using different loss calculation methodologies from their opening briefs to their supplemental briefs and obfuscating their calculations.  Here, Mr. Naj[jar] is interested in such financial trickery.  In their opening papers, both Mr. O'Hern and Mr. Naj[jar] used Last-In/First-Out ("LIFO") calculations to determine financial interest (Dkt. Nos. 25-3, 31-3). However, once it was clear Mr. Naj[jar] did not have the largest losses under the LIFO methodology, he changed his tune, introducing his self-labeled *Dura Loss* in opposition. Mr. O'Hern has not engaged in such bald-faced gamesmanship, and his loss calculation is the straightforward LIFO approach.

Additionally, Mr. Naj[jar] cites several cases in a footnote in his opposition purporting to support the notion that the *Olsten-Lax* factors should be weighted equally in assessing financial interest. (Dkt. No. 50, n. 4 at 3-4). Of the seven cases cited in the footnote, there was not a single case appointing a lead plaintiff who did not have the largest loss. The courts, in considering the first three *Olsten* factors, used those factors to supplement the fourth factor—loss—not to overturn it. One such cited case, *Robb v. Fitbit Inc.*, explicitly states that the "most important *Olsten-Lax* factor is the financial loss suffered." 2016 WL 2654351 at *3.

In short, Mr. O'Hern has the largest losses, and thus has the largest financial interest.

### 2. Mr. Naj[jar]'s So-Called *Dura Loss* Should be Rejected

For the first time in opposition, Mr. Naj[jar] advances what he calls a *Dura Loss* methodology. As discussed above, there is no basis in accepting his *Dura Loss* methodology over LIFO losses. In fact, Mr. Naj[jar] does not even urge the Court to consider his *Dura Loss* over LIFO losses. He merely introduces his *Dura Loss* calculations to demonstrate "loss can widely vary depending on which methodology is used" and to urge this Court to "look to the other three *Olsten-Lax* factors to determine financial interest." (Dkt. No. 50, at 5).

Mr. Naj[jar] proffers a flimsy justification for including his *Dura Loss*. Mr. Naj[jar] cites to *Marjanian v. Allied Nevada Gold Corp.*, 2014 WL 12769810, at *3 (D. Nev. Nov. 7, 2014) in support of his argument that *Dura Loss* calculations should be considered.

However, *Marjanian* does not support Mr. Naj[jar]'s version of *Dura Loss* where one simply multiplies the stock price decline by the shares held through the disclosure, then adds the figures up for all corrective disclosures.  (Dkt. No. 50, n. 7 at 5).  Rather, *Marjanian* simply holds that the Court should not consider losses incurred from sales that occur prior to a corrective disclosure.  2014 WL 12769810, at * 4 (not considering losses on sales that occurred prior to a corrective disclosure under *Dura.*).

Rather Mr. Naj[jar]'s version of *Dura Loss* was explicitly considered and rejected in *Sallustro*, 93 F.Supp.3d 265 (S.D.N.Y. Mar. 19, 2015). "Mr. [Najjar]'s new loss model—which renders purchase price irrelevant—is inconsistent with the statutory scheme and with *Dura* itself.  As … the PSLRA provides for a statutory cap on damages that is calculated based on the 'difference between the purchase price or sale price paid …' Given the statutory scheme, it would be odd to apply a loss model that precludes any reference to purchase price.  [. . .]  Moreover, *Dura* mandates no such approach. *Dura* merely holds that, in fraud-on-the-market cases, 'an inflated purchase price will not itself constitute or proximately cause the relevant economic loss.'"  *Sallustro*, 93 F.Supp.3d 265, 276 (S.D.N.Y. Mar. 19, 2015).  (internal citation omitted).  The Court should not entertain Mr. Naj[jar]'s attempts at casting doubt on the very methodology he himself used in his opening papers.

 **B.** **The Court Should Disregard the New Financial Interest Arguments Asserted for the First Time in Mr. Naj[jar]'s Opposition**

Mr. O'Hern respectfully submits that Mr. Naj[jar] may not advance new financial interest analyses for the first time in his opposition.  In assessing financial interest for the purpose of appointing a lead plaintiff pursuant to the PSLRA, courts do not permit movants to supplement their proffers by adducing new financial interest methodologies *after* the motion deadline.  "The [PSLRA] statute is unequivocal and imposes precise time requirements" so lead plaintiff movants cannot "'manipulate the size of their financial loss,'" and any "'supplementation [of loss calculations] after the expiration of the sixty (60) day [PSLRA motion deadline] period would not only be inconsistent with the language and purpose of the PSLRA but would effectively nullify the time limits expressly provided therein.'"  *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 439-40 (S.D. Tex. 2002) (quoting *In re Texlon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) ("The PSLRA imposes strict time requirements," and "[t]he plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed *after* the sixty (60) day window [to seek lead plaintiff appointment] has closed") (emphasis in original)); *see also*, *e.g.*, *Singer v. Nicor, Inc.*, 02 C 5168 *et al.*, 2002 WL 31356419, at *3 (N.D. Ill. Oct. 17, 2002) ("the court will not consider the candidates' amendments of their amount of financial loss made after the filing deadline"); *In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d 562, 566 (D.N.J. 2006) ("the loss amount to consider for purposes of the [lead plaintiff] motion is the number from the original" motion papers); *Miller v. Dyadic Int'l, Inc.*, 2008 WL 2465286, at *5 (S.D. Fla.

Apr. 18, 2008) ("a different rule would 'encourage parties seeking lead plaintiff status to manipulate the size of their financial loss'") (internal quotations omitted) (collecting cases). Indeed, doing otherwise would encourage gamesmanship by incentivizing movants to submit deliberately vague financial interest assessments in their moving papers, only to change tack after reviewing the competing motions and determining which financial interest metric(s) favored their motion—for example, to encourage a movant "to alter its calculation when it learned that someone else had a larger loss." *Allergan*, 2019 WL 1510894, at *3; *Nicolow*, 2013 WL 792642, at *4 (denying motion by movant who "[t]ellingly . . . made no reference to net shares purchased or a retained shares calculation in its opening motion seeking appointment as lead plaintiff, shifting its argument only *after* [a competing movant] came forward with larger LIFO losses.") (emphasis added).

Here, Mr. Naj[jar] has adduced several new arguments with respect to his alleged financial interest for the first time in opposition. First, Mr. Naj[jar]'s opening brief merely alleged that the movant "suffered financial harm" as a result of the fraud alleged in this litigation. (Dkt. No. 29 at 6). This conspicuously vague statement, unsupported by any meaningful citations to case law, appears, in hindsight, to have been formulated to maximize Mr. Naj[jar]'s flexibility to make a more specific financial interest argument after having had the benefit of reviewing competing lead plaintiff motions, and only then choosing the metric(s) that would lend the greatest support to his motion. Sure enough, after reviewing Mr. O'Hern's motion papers, Mr. Naj[jar] filed an opposition brief that

contained highly specific arguments regarding the *Olsten-Lax* factors and the relative weights that the Court should assign to each—a specificity that his opening brief conspicuously lacked.

Second, Mr. Naj[jar]'s opposition dismisses the significance of economic loss as a measure of financial interest while urging the Court to consider the other three *Olsten-Lax* factors (funds expended, shares purchased, and shares retained).  However, while Mr. Naj[jar]'s opening brief was deliberately vague with respect to the appropriate yardstick of financial interest, referring only to undefined "financial harm" (Dkt. No. 29 at 6), the damages analysis submitted in support of his opening brief *expressly* described as a "[t]able of [Mr. Naj[jar]'s] calculated *losses*, as a result of transactions in Wrap Technologies, Inc. securities".  (Dkt. No. 31) (emphasis added).  The document itself was also filed under the title "Exhibit C – *Loss Chart*."  (Dkt. No. 31-3) (emphasis added).  If Mr. Naj[jar] genuinely believed at the outset of motion practice that a holistic assessment of the *Olsten-Lax* factors was the appropriate financial interest inquiry, presumably he would have described this exhibit more generally as a table setting forth Mr. Naj[jar]'s *financial interest* in this litigation and filed it as "Exhibit C – *Financial Interest Chart*" and specifically included the first three *Olsten-Lax* factors.  It is telling that he did not do so.

Finally, Mr. Naj[jar]'s *Loss* Chart asserts that he incurred a total loss of approximately $38,291.98 in connection with the fraud alleged in this litigation using

LIFO calculation. However, for the first time in his opposition brief, Mr. Naj[jar] abruptly asserted that this loss calculation methodology is not the only way to reflect financial interest and claimed that *Dura Loss* calculations should be considered as well. Mr. Naj[jar] posits that Mr. O'Hern's and Mr. Naj[jar]'s *Dura* losses were, respectively, approximately $18,657.91 and $26,118.68—a recalculation that conveniently flips the largest loss suffered between the competing movants. Again, if Mr. Naj[jar] truly believed that loss was not the only relevant factor in calculating financial interest, it is unclear why he did not proffer a more comprehensive financial interest analysis.

Mr. O'Hern respectfully urge the Court not to reward Mr. Naj[jar]'s transparent gamesmanship by crediting his after-the-fact efforts to move the goalposts with respect to the appropriate measure of financial interest.

## III.   CONCLUSION

For the foregoing reasons and for the reasons set forth in his moving brief (Dkt. No. 24), Mr. O'Hern respectfully requests that the Court grant his motion in its entirety and deny the competing motion of Mr. Naj[jar].

Dated:  December 24, 2020          **THE ROSEN LAW FIRM, P.A.**

/s/ *Laurence M. Rosen*

Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
lrosen@rosenlegal.com

and

Phillip Kim, Esq. (pro hac vice pending)
**THE ROSEN LAW FIRM, P.A.**
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
pkim@rosenlegal.com

*[Proposed] Lead Counsel for*
*Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 24, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Laurence M. Rosen*
Laurence M. Rosen, Esq.