Scott S. Humphreys (SBN 298021)
M. Norman Goldberger (*pro hac vice*)
Kahlil C. Williams (*pro hac vice*)
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, California 90067
Telephone: 424.204.4400
Facsimile: 424.204.4350
Email:  humphreyss@ballardspahr.com

1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215.665.8500
Facsimile: 215.864.8999
Email:  goldbergerm@ballardspahr.com
        williamskc@ballardspahr.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE WRAP TECHNOLOGIES, INC. SECURITIES EXCHANGE ACT LITIGATION | Case No. 2:20-CV-8760-DMG (PVCx) <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT** <br><br> [Memorandum of Points and Authorities; Declaration of Kahlil C. Williams; Request for Judicial Notice; and [Proposed] Order filed herewith] <br><br> Hearing: <br> Judge:   Hon. Dolly M. Gee <br> Date:    Friday, July 23, 2021 <br> Time:    9:30 a.m. <br> Place:   Courtroom 8C |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Friday, July 23, 2021, at 9:30 a.m., or at such other date and time as the Court may order, Defendants Wrap Technologies, Inc. ("Wrap" or the "Company"), David Norris, Marc Thomas, James Barnes, Tom Smith, and Mike Rothans (collectively, "Defendants") will and hereby do move the Court to dismiss this action with prejudice on the grounds that the Lead Plaintiff Timothy O'Hern ("Plaintiff") has failed to state a claim for which relief can be granted pursuant to Sections 10(b) and 20 of the Securities Exchange Act of 1934.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Kahlil C. Williams and the exhibits attached thereto, and Defendants' Request for Judicial Notice, as well as the Court's record, the arguments of counsel, and any other materials that the Court chooses to consider in ruling on this Motion.

L.R. 7-3 Certification.  This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on April 16, 2021.

Dated:  April 26, 2021                          **BALLARD SPAHR LLP**

By:  _/s/ Scott S. Humphreys_
     Scott S. Humphreys
     M. Norman Goldberger (*pro hac vice*)
     Kahlil C. Williams (*pro hac vice*)

     *Attorneys for Defendants*

- 1 -
DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

## **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................................1

II.  BACKGROUND .........................................................................................3

III. ARGUMENT ..............................................................................................5

    A.   Plaintiff Has Not Adequately Pled Loss Causation ............................5

        1.   The BolaWrap trial results were widely publicized ..................6

        2.   The Seeking Alpha Post Was Mere Repackaging Of Public Information, Not New, Complex Analysis......................8

        3.   The Information Required Little Effort to Locate or Analyze ..................................................................................9

        4.   The Analysis Was Conducted By An Admitted Short Seller ....................................................................................10

    B.   Plaintiff Fails To Allege That Defendants Made Any Actionable Misstatements or Omissions. ..................................................................11

    C.   Plaintiff Does Not Adequately Allege That Defendants Made Any Statements That Were Material......................................................16

        1.   The Statements Are Not Material In Light Of The Context In Which They Were Made. .........................................17

        2.   No Reasonable Investor Would Rely On The Statements Because They Were Mere Puffery.............................................19

    D.   Plaintiff Fails To Meet The Heightened Standard Of Pleading Scienter.............................................................................................20

    E.   Plaintiff's Section 20 Claim Must Be Dismissed Because He Fails To Allege An Underlying Securities Violation. ........................24

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barnes v. Edison Int'l*,
No. 18-cv-09690 CBM(FFMx) (C.D. Cal. Apr. 5, 2021) .............................. 16, 25

*Basic v. Levinson*,
485 U.S. 224 (1988) .............................................................................................. 12

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ................................................................................ 11

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ................................................................... 2, 6, 7, 10

*Bonanno v. Cellular Biomedicine Grp., Inc.*,
No. 15-cv-01795-WHO, 2016 U.S. Dist. LEXIS 119194
(N.D. Cal. Sept. 2, 2016) ........................................................................................ 8

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v.
Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017) ............................................. 13, 15

*City of Miami v. Quality Sys. (In re Quality Sys.)*,
865 F.3d 1130 (9th Cir. 2017) .............................................................................. 20

*Curry v. Yelp Inc.*,
875 F.3d 1219 (9th Cir. 2017) .............................................................................. 24

*In re Daou Sys.*,
411 F.3d 1006 (9th Cir. 2005) ......................................................................... 22, 23

*Ferraro Family Found., Inc. v. Corcept Therapeutics Inc.*,
No. 19-cv-01372-LHK, 2020 U.S. Dist. LEXIS 220512
(N.D. Cal. Nov. 20, 2020) ....................................................................................... 8

*Ferreira v. Funko Inc.*,
No. 20-02319-VAP, 2021 U.S. Dist. LEXIS 59102
(C.D. Cal. Feb. 25, 2021) ................................................................................ 15, 16

*In re Finjan Holdings, Inc. Sec. Litig.*,
No. 20-cv-04289, 2021 U.S. Dist. LEXIS 71350
(N.D. Cal. Apr. 13, 2021) ...................................................................................... 13

*Grigsby v. BofI Holding, Inc.*,
979 F.3d 1198 (9th Cir. 2020) ........................................................................... 7, 10

*Hampton v. Aqua Metals, Inc.*,
No. 17-cv-07142-HSG, 2020 U.S. Dist. LEXIS 214010
(N.D. Cal. Nov. 16, 2020) ..................................................................................... 14

*In re Herbalife, Ltd. Sec. Litig.*,
No. 14-cv-2850-DSF (JCGx), 2015 U.S. Dist. LEXIS 37109
(C.D. Cal. Mar. 16, 2015) ................................................................................... 9, 11

ii

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) .................................................................................. 25

*Ikeda v. Baidu, Inc.*,
No. 20-cv-02768, 2021 U.S. Dist. LEXIS 67829
(N.D. Cal. Apr. 7, 2021) ............................................................................................ 12

*In re Impac Mortg. Holdings, Inc.*,
554 F. Supp. 2d 1083 (C.D. Cal. 2008) ...................................................... 17, 20, 23

*In re Intrexon Corp. Sec. Litig.*,
No. 16-cv-02398-RS, 2017 U.S. Dist. LEXIS 26401
(N.D. Cal. Feb. 24, 2017) .............................................................................................. 9

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .................................................................................... 14

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) .................................................................................. 23

*Lloyd v. CVB Financial Corp.*,
811 F.3d 1200, 1206–07 (9th Cir. 2016) .................................................................. 21

*In re MannKind Sec. Actions*,
835 F. Supp. 2d 797 (C.D. Cal. 2011) ...................................................................... 22

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) .................................................................................. 11

*Miller v. PCM, Inc.*,
No. 17-cv-3364-VAP-(KSx), 2018 U.S. Dist. LEXIS 148930
(C.D. Cal. Jan. 3, 2018) ............................................................................................ 10

*In re Nektar Therapeutics*,
No. 18-cv-06607-HSG, 2020 U.S. Dist. LEXIS 122715
(N.D. Cal. July 13, 2020) ....................................................................................... 8, 9

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) .......................................................................... 5, 11, 21

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) .................................................................................................. 13

*Onie v. Conners (In re Cutera Sec. Litig.)*,
610 F.3d 1103 (9th Cir. 2010) .............................................................................. 20, 21

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) .............................................................................. 11, 17

*In re Pixar Sec. Litig.*,
450 F. Supp. 2d 1096 (C.D. Cal. 2006) .................................................................... 23

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051, 1060 (9th Cir. 2014) ................................................................. *passim*

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*Prodanova v. H.C. Wainwright & Co., LLC*,
No. 19-56048, 2021 U.S. App. LEXIS 10124 (9th Cir. Apr. 8, 2021) .......... 24, 25

*Purple Mt. Tr. v. Wells Fargo & Co.*,
432 F. Supp. 3d 1095 (N.D. Cal. 2020) ................................................................ 14

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268 (9th Cir. 2017) .............................. 12, 14, 20

*In re Rigel Pharms., Inc. Sec. Litig., Inter-Loc. Pension Fund GCC/IBT v. Deleage*,
697 F.3d 869 (9th Cir. 2012) ................................................................................ 24, 25

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) .............................................................................. 15

*Rosenbaum v. Syntex Corp. (In re Syntex Corp. Sec. Litig.)*,
95 F.3d 922 (9th Cir. 1996) ................................................................................ 18

*Sanchez v. IXYS Corp.*,
No. 17-cv-06441-WHO, 2018 U.S. Dist. LEXIS 170332 (N.D. Cal. Oct 2, 2018) ......................................................................................................... 18

*Scheller v. Nutanix*,
450 F. Supp. 3d 1024 (N.D. Cal. 2020) .............................................................. 14

*In re Syntex Corp. Sec. Litig.*,
855 F. Supp. 1086 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996) ....................................................................................................................... 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ............................................................................................. 22, 24

*Webb v. SolarCity Corp.*,
884 F.3d 844 (9th Cir. 2018) .............................................................................. 24, 25

*In re Wet Seal, Inc. Sec. Litig.*,
518 F. Supp. 2d 1148 (C.D. Cal. 2007) .............................................................. 23, 25

*Ziolkowski v. Netflix, Inc.*,
No. 17-cv-01070-HSG, 2018 U.S. Dist. LEXIS 164641 (N.D. Cal. Sept. 25, 2018) ...................................................................................................... 22

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2000) .............................................................................. 21, 22

**Statutes**

15 U.S.C. § 77o ...................................................................................................... 25

15 U.S.C. § 78t(a) ................................................................................................. 25

Private Securities Litigation Reform Act ............................................................ 11, 22

Securities Exchange Act of 1934 ......................................................................... 5, 25

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Securities Exchange Act Section 10(b) .............................................................*passim*

Securities Exchange Act Section 20(a) .................................................................25

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## I.      **INTRODUCTION**

On August 25, 2020, the Board of Police Commissioners for the Los Angeles Police Department (the "LAPD" or "Department") convened and voted unanimously to extend its pilot program for the BolaWrap, a remote restraining device, for six more months.  During that meeting, the Commissioners released a three-page report detailing the LAPD's nine uses of the BolaWrap during the first six months of the program (the "BolaWrap Report" or the "Report").  The Report was posted to the LAPD website, discussed at length during the Commission's public meeting, hyperlinked in the meeting agenda, and covered by the *Los Angeles Daily News* and the *Los Angeles Times* the same day.

The Report determined that, in six (of nine) instances, the BolaWrap was "effective" because it had prevented further use of force.  The Report also showed that the LAPD deployed the device seven times between February 22 and March 12, 2020, with usage declining, predictably, after the State of California adopted a COVID-19 stay-at-home order on March 19, 2020.  The early findings, which were known to Wrap, prompted two company executives to state, on an April 29, 2020 earnings call, that the pilot program was going well and that the LAPD's use of the BolaWrap, in light of the pandemic, exceeded their expectations.

On September 23, 2020, *four weeks* after the Report was released, a short seller published a negative view of the trial results on the website *Seeking Alpha*. Citing to the Report, the author determined the results were, in fact, "an epic fail," because the BolaWrap's tether did not fully wrap a suspect in each instance.  The author also concluded that the usage rate of the BolaWrap was actually quite limited, and that the trial results were, thus, "terrible" for Wrap.  The same day, Wrap's stock declined by nearly 25% and a putative securities fraud complaint was filed in this case, alleging that the "truth" about the pilot program did not emerge until the *Seeking Alpha* post was published.  That complaint ignored the Report's publication on August 25, 2020, as well as the *Daily News* coverage from that day,

- 1 -

which noted, *in the lede*, that "the BolaWrap only successfully wrapped around a suspect once in nearly eight months of testing," and that the LAPD had used the device a total of nine times during the trial period.

The Amended Complaint in this case, to its credit, acknowledges the publication of the Report on the LAPD website, the contemporaneous media coverage, and the increase in Wrap's stock price on August 25, 2020.  The Amended Complaint also asserts that the market for Wrap's stock "promptly digested current information from all publicly available sources and reflected such information in the prices of the securities."  But these concessions are fatal to Plaintiff's claims, unless he can plead, plausibly, that the *Seeking Alpha* post was a corrective disclosure of new information previously unavailable to the market.

Plaintiff does not—and cannot—do so.  This Circuit has repeatedly declined to recognize the opinions of short sellers—*gleaned entirely from publicly available information*—as corrective disclosures, which are essential to sustaining the element of loss causation in a securities fraud case.  The Ninth Circuit's recent decision in *In re BofI Holding, Inc. Securities Litigation*, 977 F.3d 781 (9th Cir. 2020), makes clear that once facts about a company have been publicly disclosed, a subsequent recasting of those facts must also contain new information or analysis unavailable to the average investor in order to constitute a corrective disclosure.  But here, every fact set forth in the *Seeking Alpha* post was thoroughly detailed weeks prior in public documents that were widely available. The only new information disseminated to the market on September 23, 2020, was the author's negative, self-serving opinion, which cannot form the basis for a securities fraud claim.  Separately, the Amended Complaint fails to identify a single material false statement, much less one uttered with the requisite scienter needed to withstand a motion to dismiss.  Plaintiff's claims rest entirely on vague, optimistic statements by two Wrap executives, whose expectations of the LAPD's use of the BolaWrap during the trial were informed by prior experience and the COVID-19 pandemic.

- 2 -

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Not only are these statements wholly inactionable under the securities laws, they were entirely accurate in context.

In sum, Plaintiff's Amended Complaint fails to plead loss causation, materiality, falsity, and scienter, each of which are independent grounds for dismissal.  Moreover, given the incurable nature of these defects, this complaint should be dismissed with prejudice for the reasons set forth below.

## II.    BACKGROUND

Wrap Technologies, Inc. ("Wrap" or the "Company") is a security technology company that develops modern policing solutions for law enforcement and security personnel; Wrap has sold these products in the United States and 36 other countries. Ex. 1, at 2, 3.[1]  The Company's primary product is the BolaWrap 100, ("BolaWrap"), a hand-held remote restraint device designed to impede subjects from fleeing a scene, rapidly approaching an officer, or inducing harm to themselves or others. *Id.*  In December 2019, the LAPD authorized a six-month pilot program for testing the BolaWrap, which began on February 5, 2020 (the "Pilot Program"). Amended Complaint ("Compl.") ¶¶ 39, 41.  The LAPD used the BolaWrap in the field seven times between February 22, 2020 and March 12, 2020, deeming six of these uses "effective" because no additional force was necessary or because the device stopped a suspect's advancement.  Ex. 2 at 3–5.  On March 19, 2020, the California issued a shelter-in-place order to limit the spread of COVID-19.  Ex. 3.

On April 29, 2020, David Norris, James Barnes, Tom Smith, and Mike Rothans (together, with Defendant Marc Thomas and Wrap, "Defendants") participated in a conference call to discuss the Company's 2020 Q1 earnings (the "Earnings Call").  Ex. 4.  During the call, Rothans, a retired 31-year veteran of the Los Angeles County Sheriff's Office, was asked what the Department was looking for in the Pilot Program and responded that, though progress had slowed because of

---

[1]    All citations to exhibits ("Ex.") herein shall refer to the exhibits attached to the Declaration of Kahlil C. Williams filed in support of this motion.

- 3 -

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

the pandemic, "progress has been very good.  They've used it quite a bit.  In fact, they've used it more than we anticipated they would be using it and the success rate has been really outstanding."  *Id.*; *see also* Ex. 5 at 10.  Later, in a response to a question concerning the LAPD's use of BolaWrap as compared with TASER, Smith—the former President of TASER and current president of Wrap—stated that the LAPD had used the BolaWrap "more than we anticipated in the trial period as we were first starting with them before the coronavirus."  *Id.*

Following the end of the initial six-month trial period, Michel Moore, the LAPD Chief of Police, recommended to the LAPD Board of Commissioners (the "Commission") that the Pilot Program be authorized for an additional 180 days due to "an inefficient sample size."  Ex. 2.  On August 25, 2020, the Commission met to discuss the Report and approve Moore's recommendation, among other things.  Ex. 6.  The meeting was open to the public, and the meeting agenda hyperlinked to the Report, which was also posted on the LAPD's website.  *Id.*; *see also* Compl. ¶ 47.

The meeting and the Report were also covered that day by the *Los Angeles Daily News* and the *Los Angeles Times*.  *See* Ex. 7 and Ex. 8.  The *Daily News* reported that the BolaWrap "has only successfully wrapped around a suspect once in nearly eight months of testing," and that "[o]fficers have only fired the BolaWrap nine times," while noting that the LAPD still gave the device "high marks."  Ex. 7.  The *Times* article reported that 200 devices were provided for testing, but that the Pilot Program produced "too little data to gauge the tool's overall effectiveness."  Ex. 8.  Nonetheless, the LAPD's Deputy Chief Martin Baeza noted that the LAPD "remained optimistic" that the BolaWrap could "assist officers in bringing potentially dangerous situations to an end without using more deadly force."  *Id.*  Following the day's events, Wrap's stock price increased.  Compl. ¶ 49.

Nearly a month later, on September 23, 2020, an author named White Diamond Research wrote a blog post on the website *Seeking Alpha* that recounted the Report's already-public findings (the "*Seeking Alpha* Post" or the "Post").  Ex.

- 4 -
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

9. The Post argued that Pilot Program's findings were "terrible" and suggested that its results had been purposely hidden from investors. *Id.; see also* Compl. ¶47. The same day, a Wrap shareholder commenced this action, alleging violations of Sections 10(b) and 20 of the Securities Exchange Act of 1934. Dkt No. 1. Additional lawsuits were filed on October 1, 2020 and October 15, 2020, which were eventually consolidated into the instant action. Dkt No. 19. On March 12, 2021, lead Plaintiff Timothy O'Hern ("Plaintiff") filed an Amended Complaint, which Defendants now, respectfully, move to dismiss.

## III. ARGUMENT

To properly plead a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 413 (9th Cir. 2020) (quotation omitted). Here, the Amended Complaint fails for at least three reasons. First, it does not adequately allege loss causation, because it does not plausibly allege that the *Seeking Alpha* Post was a corrective disclosure. Second, the Amended Complaint does not identify a single statement that is either false or material. Third, and relatedly, none of Defendants' statements evince the strong inference of scienter that is required to plausibly allege securities fraud.

### A. Plaintiff Has Not Adequately Pled Loss Causation

To establish loss causation in a fraud-on-the-market case, shareholders usually identify one or more corrective disclosures through which the "truth became known" to the market, thus "correcting the misstatement or omission that is the basis for the action." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789–90 (9th Cir. 2020). Plaintiff has asserted that this is a fraud-on-the-market case, under which "the market promptly digests current information regarding the Company from all publicly available sources, which, in turn, is reflected in the prices of the Company's

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

securities." Compl. ¶¶ 73–74. However, this assertion is directly undermined by his claim that news about the BolaWrap, published on August 25, 2020, was not digested by the market until weeks later. Compl. ¶¶ 47–50, 54–56.

The Ninth Circuit has adopted a "flexible approach" that may permit publicly-available information to constitute a corrective disclosure if, "[b]ased on plaintiffs' particularized allegations, [the Court may] plausibly infer that the alleged corrective disclosure provided new information to the market that was not yet reflected in the company's stock price." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d at 795. In addition to whether the underlying data was publicly available, the Court may also consider other factors, including "the complexity of the data and its relationship to the alleged misstatements" and "the great effort needed to locate and analyze" the data. *Id.* Plaintiff's sole corrective disclosure—the *Seeking Alpha* Post—fails on all three counts.

### 1.   The BolaWrap Trial Results Were Widely Publicized

Plaintiff acknowledges that the underlying facts in the September 23, 2020 *Seeking Alpha* Post were publicly disclosed nearly *one month prior* by the LAPD Commission in the LAPD BolaWrap Report on August 25, 2020. Compl. ¶¶ 47–49. Plaintiff also concedes the Report was the subject of same-day reporting by the *Los Angeles Times* and the *Los Angeles Daily* News. Compl. ¶ 49. These concessions, together with Plaintiff's reliance on the efficient market hypothesis, effectively doom Plaintiff's theory of loss causation.

Courts of this jurisdiction have repeatedly acknowledged the heavy burden on shareholders whose purported corrective disclosures are derived from publicly available sources. *See, e.g., Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1205 (9th Cir. 2020) ("In general, a disclosure is not "corrective" if it contains information derived entirely from public filings and other publicly available sources of which the stock market was presumed to be aware."); *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d at 794 ("[E]ach of the blog posts asserts that the information it discloses was

derived from publicly available sources . . . . that assertion makes it more difficult for the shareholders to rely on the posts as corrective disclosures.").  In order to meet that burden here, Plaintiff must plead "particular facts plausibly suggesting that other market participants *had not* done the same analysis" on August 25, 2020 as done in the *Seeking Alpha* Post.  *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d at 794 (emphasis in original).

Plaintiff, however, does not even bother to assert that the analysis contained in the *Seeking Alpha* Post was unavailable to market participants before September 23, 2020.  And had he done so, those pleadings would be thoroughly refuted by the August 25, 2020 *Times* and *Daily News* articles, each of which detail the Report's key findings and draw the same conclusions outlined in the *Seeking Alpha* Post, albeit weeks earlier.  *See* Exs. 7 and 8.  In particular, the *title* of the *Daily News* article makes clear that the "device only fully wrapped an LA suspect once" and the *opening sentence* noted BolaWrap "only successfully wrapped around a suspect once *in nearly eight months of testing*."  Ex. 7.  Elsewhere in the piece, the *Daily News* reported that the LAPD "only fired the BolaWrap . . . nine times," that a suspect "immediately broke free of the restraint," and that, "in nearly all of the attempts, the people under arrest avoided getting wrapped."  *Id.*  The *Times* article, for its part, reported that the LAPD had only "used the BolaWrap a total of nine times," and that Wrap had provided the LAPD "200 devices for testing."  Ex. 8.

Simply put, on August 25, 2020, these articles clearly broadcast to the market BolaWrap's usage rate during the Pilot Program, and the frequency with which the device completely wrapped around a suspect.  Plaintiff has pled no facts plausibly suggesting that the market did not analyze these facts that day, and, without such facts, Plaintiff's claims must be dismissed.  *See Ferraro Family Found., Inc. v. Corcept Therapeutics Inc.*, No. 19-cv-01372-LHK, 2020 U.S. Dist. LEXIS 220512, at *81 (N.D. Cal. Nov. 20, 2020) (granting motion to dismiss where plaintiff failed to sufficiently plead that [the analysis performed in a purported corrective disclosure

- 7 -

had not yet been conducted by other market participants]); *Bonanno v. Cellular Biomedicine Grp., Inc.*, No. 15-cv-01795-WHO, 2016 U.S. Dist. LEXIS 119194, at *17 (N.D. Cal. Sept. 2, 2016) ("Plaintiffs have failed to point to any non-public information in the [corrective disclosure] and have failed to explain why this public information would not be factored into market price.").

### 2. The Seeking Alpha Post Was Mere Repackaging of Public Information, Not New, Complex Analysis

Plaintiff asserts that the *Seeking Alpha* Post took a "deep dive" into the BolaWrap Trial Report.  Compl. ¶ 54.  In reality, however, the Post did nothing more than recharacterize the LAPD's determinations that the BolaWrap was "effective," opining instead that because the device did not fully wrap around a suspect in each instance, the BolaWrap "only really worked once."  Ex. 9 at 1.  The Post also hypothesizes that, with 200 devices, the LAPD would use each BolaWrap "once every 11 years."  *Id.*  The Post concludes by acknowledging that the author is "short [Wrap's stock] and is merely "expressing [their] own opinions."  *Id.* at 6.

The Post is precisely the type of opinion statement that *cannot* form a corrective disclosure.  Time and again, courts of this Circuit have rejected purported corrective disclosures that are, in fact, a "mere repackaging of already-public information by an analyst or short-seller."  *In re Nektar Therapeutics*, No. 18-cv-06607-HSG, 2020 U.S. Dist. LEXIS 122715, at *55–56 (N.D. Cal. July 13, 2020) (quotation omitted); *In re Intrexon Corp. Sec. Litig.*, No. 16-cv-02398-RS, 2017 U.S. Dist. LEXIS 26401, at *24 (N.D. Cal. Feb. 24, 2017) (same) (quoting *In re Herbalife, Ltd. Sec. Litig.*, No. 14-cv-2850-DSF (JCGx), 2015 U.S. Dist. LEXIS 37109, at *12 n.7 (C.D. Cal. Mar. 16, 2015)).  Rather than reveal any truth to the market, these statements simply disclose the author's negative opinions about a company, which may move the stock price, but "does not constitute a corrective disclosure of anything but the journalists' opinions."  *In re Nektar Therapeutics*, 2020 U.S. Dist. LEXIS 122715, at *55–56 (quoting *In re Omnicom Grp., Inc. Sec.*

- 8 -

*Litig.*, 597 F.3d 501, 512 (2d Cir. 2010)). Were it otherwise, "every investor who suffers a loss in the financial markets could sue under § 10(b) using an analyst's negative analysis of public filings as a corrective disclosure." *In re Herbalife*, 2015 U.S. Dist. LEXIS 37109, at *13 (quoting *Meyer v. Greene*, 710 F.3d 1189, 1199 (11ᵗʰ Cir. 2013)); *see also In re Nektar Therapeutics*, 2020 U.S. Dist. LEXIS 122715, at *55–56 (same).

3. The Information Required Little Effort to Locate or Analyze

While Plaintiff suggests that the BolaWrap Report was difficult for investors to find because "neither the *Los Angeles Times* or the *Los Angeles Daily News* article provided a link to the [Report] or mentioned where [it could] be found, Compl. ¶ 50, the Report was easily accessible on the Internet. Apart from the multiple references to the Report in media coverage, the Report was also available through a link in the Commission's minutes. Ex. 6. In addition, the August 25, 2020 meeting, in which the trial results were published and discussed, was open to the public via teleconference and videoconference. Thus, to the degree Plaintiff claims that the Report was not widely available, there is no basis for such an assertion, and, in any event, it is not a defense under the efficient market hypothesis relied upon by Plaintiff, which provides that "all public information is incorporated into the market price *no matter how far flung it may be*." *See Miller v. PCM, Inc.*, No. 17-cv-3364-VAP-(KSx), 2018 U.S. Dist. LEXIS 148930, at *36 (C.D. Cal. Jan. 3, 2018) (citing *Bonanno v. Cellular Biomedicine Grp., Inc.*, No. 15-cv-01795-WHO, 2016 U.S. Dist. LEXIS 119194, at *16 (N.D. Cal. Sept. 2, 2016) (emphasis added)).

Similarly, the information in the three-page Report required little effort to analyze, as illustrated by the news articles that reached the same conclusions as White Diamond Research regarding usage rates and success. The *Seeking Alpha* Post merely recast the same conclusions from the Report in a negative and self-serving light, a task which "did not require any expertise or specialized skills beyond what a typical market participant would possess." *Grigsby v. BofI Holding*,

- 9 -

*Inc.*, 979 F.3d 1198, 1208 (9th Cir. 2020); *see also Miller v. PCM*, 2018 U.S. Dist. LEXIS 148930, at \*35 (finding that loss causation was not adequately pled because a "Seeking Alpha post was gleaned entirely from public filings and information that was reasonably available to its author, who professed no expertise, and clarified that the post represented his or her own opinions") (internal quotations omitted).  Given the extensive media coverage and the public availability of the LAPD Report, it cannot be plausibly inferred that the *Seeking Alpha* Post "provided new information to the market that was not yet reflected in the company's stock price."  *In re BofI Holding*, *Inc. Sec. Litig.*, 977 F.3d 781, 795 (9th Cir. 2020).

4.      <u>The Analysis Was Conducted By An Admitted Short Seller</u>

Finally, as noted above, the *Seeking Alpha* Post was authored by a person or people with a short position in Wrap's stock, and, thus, would benefit from a decline in the share price triggered by negative information about the Company.  This financial incentive, however, further damages Plaintiff's claim that the Post is a corrective disclosure, since "a reasonable investor reading these posts would likely have taken their contents with a healthy grain of salt."  *In re BofI Holding*, 977 F.3d at 797 (9th Cir. 2020).  Elsewhere, this Court has noted that recognizing a short seller's opinion as a corrective disclosure would be a "black swan" event, underscoring the low likelihood that such an opinion could actually reveal "something previously hidden or actively concealed."  *In re Herbalife, Ltd. Sec. Litig.*, No. 14-cv-2850-DSF (JCGx), 2015 U.S. Dist. LEXIS 37109, at \*17 n.9 (C.D. Cal. Mar. 16, 2015) (quoting *Meyer*, 710 F.3d at 1199 n.10).  And, as in *In re Herbalife*, Plaintiff provides "no reason to believe this is such an instance."  2015 U.S. Dist. LEXIS 37109, at \*17.

In sum, Plaintiff has not adequately pled loss causation here. Though this deficiency, by itself, is fatal to Plaintiff's claims, he has separately failed to identify a single false or material statement made by any Defendant, which are independent grounds for dismissal.

- 10 -

**B.** **_Plaintiff Fails To Allege That Defendants Made Any Actionable Misstatements or Omissions._**

In order for a statement to be actionable under Section 10(b), it must be false. *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 413 (9th Cir. 2020).  A statement is not false or misleading unless it is "capable of *objective verification*," *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014) (emphasis added), and "would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists," *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (quotation omitted).  The Private Securities Litigation Reform Act's ("PSLRA") requirements for pleading falsity are "exacting."  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008).  Thus, to survive dismissal, a complaint must "specify *each* statement alleged to have been misleading, the reason or reasons why the statement is misleading," and the basis for the allegations of the statement's falsity. *Id.* (quoting 15 U.S.C. § 78u-4(b)(1)).

The allegations in the Amended Complaint fail to make out any false statements by Defendants.  In all, Plaintiff bases his claim on four purported misstatements or omissions relating to the Pilot Program:

1) Rothans' statement, on the April 29, 2020 Earnings Call, that "the progress has been *very good*. They've used it *quite a bit*. In fact, they've used it more than we anticipated they would be using it and the success rate has been *really outstanding*."  Compl. ¶ 44 (emphasis added).

2) Smith's comment, on the same call, that "we have seen them use it more than we anticipated in the trial period."  Compl. ¶ 45.

Plaintiff then contends that these "prior misrepresentations" were not corrected in statements made at:[2]

---

[2]  An omission does not give rise to a cause of action under Section 10(b) unless the speaker had a duty to disclose. *Basic v. Levinson*, 485 U.S. 224, 239 n.17 (1988).  Defendants had no such duty here because "a duty to provide information

- 11 -

3) The September 3, 2020 LD 500 virtual conference, at which Smith stated that the LAPD has had great feedback from its offices about the BolaWrap, without disclosing the existence of or results from the LAPD BolaWrap Report (Compl. ¶ 52); and

4) The September 9, 2020 9th Annual Gateway Conference, where Smith purportedly "spoke about the LAPD Pilot Program, but again failed to disclose the existence of or results from the LAPD BolaWrap Report." (Compl. ¶ 53.)

Plaintiff alleges that the Earnings Call statements were false because, in his view, the seven times that the LAPD used the BolaWrap (as of the Earnings Call) were not "quite a bit," nor had the progress of the Pilot Program been "very good." Moreover, Plaintiff claims that, because BolaWrap was ineffective twice and performed as advertised once, the device did not maintain a "really outstanding" success rate. Compl. ¶ 46. Plaintiff then pleads that Smith "doubled down" by adding that use of the BolaWrap was "more than we anticipated." Compl. ¶ 45.

These threadbare allegations are insufficient to meet the stringent standard for pleading that the statements were, in fact, false. Rothans' comments that "the progress has been *very good*," the LAPD had used the BolaWrap "*quite a bit*," and the success rate was "*really outstanding*," Compl. ¶ 44, are statements of opinion. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183 (2015) ("An opinion is a belief, a view, or a sentiment which the mind forms of persons or things . . . [and] rests on grounds insufficient for complete

exists only where statements were made which were misleading in light of the context surrounding the statements." *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1278 (9th Cir. 2017). These statements cannot be deemed false, material, or a failure to correct prior misrepresentations because they relate back to statements—on the Earnings Call— that themselves cannot be considered false or material. *See id.* ("Just as there was no statement capable of being factually misleading, there was no omission that could have been actionable as misleading."). In any event, Plaintiff alleges that Defendants omitted information that was available in the LAPD Report and related press reports, but "the securities laws do not require the disclosure of publically available information." *Ikeda v. Baidu, Inc.*, No. 20-cv-02768, 2021 U.S. Dist. LEXIS 67829, at *28–29 (N.D. Cal. Apr. 7, 2021) (collecting cases).

- 12 -

demonstration." (quotations and alterations omitted)).[3] Therefore, to survive dismissal, Plaintiff must allege *both* that "(1) objectively, the opinion is not true and (2) subjectively, the speaker of the opinion did not hold the belief." *In re Finjan Holdings, Inc. Sec. Litig.*, No. 20-cv-04289, 2021 U.S. Dist. LEXIS 71350, at *30 (N.D. Cal. Apr. 13, 2021) (citing *City of Dearborn Heights*, 856 F.3d at 615–16). He can allege neither.

To begin, the challenged statements are not *objectively* false. In *Police Retirement System of St. Louis v. Intuitive Surgical, Inc.*, investors brought securities fraud claims based on corporate statements that: "(i) that the opportunity for system placement at hospitals 'is still very, very large'; (ii) that there is potential for growth in [another] market; (iii) that the company is 'reservedly optimistic' about sales; and (iv) . . . that [the company] 'will come out stronger' and 'in a pretty good position' despite the economic crisis." 759 F.3d 1051, 1060 (9th Cir. 2014). The Ninth Circuit affirmed dismissal, ruling that the company's comments were not "objectively verifiable," and "the antithesis of facts." *Id.* Similarly here, characterizations of the Pilot Program results as "very good" and "really outstanding," or that BolaWrap was used "quite a bit," contain "no purported objectively verifiable facts" and are nonactionable on that basis alone. *Hampton v. Aqua Metals, Inc.*, No. 17-cv-07142-HSG, 2020 U.S. Dist. LEXIS 214010, at *40 (N.D. Cal. Nov. 16, 2020) (citation omitted); *see also Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund. v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017) (citation omitted); *Purple Mt. Tr. v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1103 (N.D. Cal. 2020) (statement that defendants' "number one priority remains rebuilding trust" is incapable of "objective verification" and not actionable under Section 10(b)).

---

[3] *See also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017) (applying *Omnicare* to Section 10(b) claims).

- 13 -

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Moreover, even if any of the challenged statements were verifiable, Plaintiff fails to allege, with any specificity, why or how they were objectively wrong. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (ruling that plaintiff describe how defendants' statements "directly contradict what [they] knew at that time.") (citation omitted). Here, the *sole* alleged basis for the statements' falsity is that, given the reported number of uses of BolaWrap and its success rate during the Pilot Program, Compl. ¶ 46, the results were *objectively* unsatisfactory, such that "no reasonable person" would have agreed with Rothans' or Smith's remarks. *See id.* But Plaintiff, at a minimum, is required to allege why the statements were wrong, including: what the Pilot Program results should have been; what results would have been necessary to substantiate Defendants' positive comments about the Program's progress; or why the results signified an unsuccessful trial.[4] *See, e.g.*, *Scheller v. Nutanix*, 450 F. Supp. 3d 1024, 1036 (N.D. Cal. 2020) (holding plaintiff's report that defendant "implemented hiring freezes of all sales personnel during the Class Period" as inadequate to establish falsity because the plaintiff "failed to provide any details about these hiring freezes, such as how many there were, how long they lasted, how often they were instituted, how many employees they affected, or what locations they covered"); *Ferreira v. Funko Inc.*, No. 20-02319-VAP (PJWx), 2021 U.S. Dist. LEXIS 59102, at \*43–44 (C.D. Cal. Feb. 25, 2021) (because plaintiffs did not detail "an objectively-verifiable amount, percentage, or value of the excess or obsolete inventory," they failed their burden of alleging that defendants' statements about excess inventory were false) (citation omitted). He provides none of this detail.

---

[4] Plaintiff also alleges Smith's statement that "we have seen them use it more than we anticipated in the trial period" to be false. Compl. ¶ 45. But, unlike Rothans' statements, Plaintiff contends only that Smith's comment corroborated Rothans' and does not, at any point, allege in what way Smith's statement was false or misleading. Even if he did, the Amended Complaint contains nothing indicating the extent of use which Defendants "anticipated" that could contradict Smith's remark. Therefore, Smith's statement, too, is nonactionable.

- 14 -

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants' statements also are not *subjectively* false.  The Amended Complaint contains *no* allegations—let alone adequate, particularized ones—that Rothans (or Smith) "did not believe" that the Pilot Program was not going well, *see generally* Compl. ¶¶ 43–46; *see City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616–17 (9th Cir. 2017).  The Pilot results, first reported in the LAPD Report released after the Earnings Call, cannot demonstrate that Defendants did not believe what they said.  *See Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001) (noting that "[h]onest optimism followed by disappointment is not the same as lying").  And Plaintiff's conclusory, bald assertion that Rothans "was aware of how frequently the LAPD had been using the BolaWrap, as well as how BolaWrap truly performed in the field" because Rothans had "weekly communications with the LAPD" cannot close that gap, especially since there is no specific allegation (or supporting fact) that, as part of these "weekly communications," LAPD provided any information to Rothans that would that cause him to believe that the trial was going poorly.

Plaintiff's inability to plead objective or subjective falsity flows directly from the subjective and objective *accuracy* of Defendants' statements.  During the Earnings Call, Smith and Rothans reported that, despite the unforeseen challenges of the coronavirus pandemic, LAPD's pace of testing and adoption of BolaWrap was "likely one of [the Department's] fastest."  Ex. 4. at 7.  Bolstering this claim, Defendants cited TASER as a point of comparison, noting that it took the LAPD over 20 years to achieve widespread adoption, *id*. at 7, and that the recent reported usage rate for TASER was lower even than BolaWrap's, *id*. at 12 (reporting 313 uses of TASER among its 90,000 officers, compared to 9 uses of BolaWrap among 200 officers).  Plaintiff also ignores LAPD's stated goal for the Pilot Program (30 uses of the BolaWrap), meaning that the trial was on pace to meet its goal prior to shutdowns prompted by the coronavirus.  *Id*. at 10.  Indeed, Defendants' optimism was echoed by the LAPD, which unanimously agreed to extend its trial with

- 15 -

BolaWrap amid praise and positive reviews from Department officials.  Compl. ¶¶ 49–50.  In short, there is no basis for Plaintiff's view that positive statements about the Pilot Program were false or even inaccurate.  *See Ferreira*, 2021 U.S. Dist. LEXIS 59102, at \*43–44 (defendants' statements about inventory were not false in light of information given during the same earnings call that plaintiffs omitted from their complaint) (citation omitted); *Barnes v. Edison Int'l*, No. 18-cv-09690 CBM(FFMx), slip. op. at 20 (C.D. Cal. Apr. 5, 2021) ("Here, Plaintiffs' own allegations reveal that the market was aware of the safety failures in the Edison Defendant's infrastructure, as each of CPUC's admonitions of the Edison Defendants which purportedly evidence the misleading nature of the statements was publicly available.").  Because Plaintiff fails to meet the basic element of pleading securities fraud, his claim must be dismissed.

### C.  *Plaintiff Does Not Adequately Allege That Defendants Made Any Statements That Were Material.*

Plaintiff also fails to adequately allege that the challenged statements were material.  "To meet the materiality requirement of [Section 10(b)], the complaint must allege facts sufficient to support the inference that there is 'a substantial likelihood that the [defendant's assertion] would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'"  *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988)).  In other words, a statement is material if it would "induce the reliance of a reasonable investor" in making an investment decision.  *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014).  When assessing materiality, "the context in which [a defendant's] statements were made is key," *Police Ret. Sys.*, 759 F.3d at 1060—the allegations must establish that a reasonable investor could have relied on the statements in light of "the total mix of information" that was available at the time the statements were made.  *In re Impac Mortg. Holdings,*

- 16 -

*Inc.*, 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008) (quotation omitted). Defendants' statements are immaterial and, thus, inactionable for two reasons. First, no reasonable investor would consider the statements to be material in light of the context in which they were made and the "total mix of information" presented on the Earnings Call. And second, the statements are, at best, vague, subjective "puffery," which courts agree are immaterial and not actionable under Section 10(b).

> 1.    The Statements Are Not Material In Light Of The Context In
> Which They Were Made.

A court will not assume a reasonable investor would rely on optimistic statements that are clarified or conditioned by accompanying remarks or other publicly available information. *See, e.g.*, *Sanchez v. IXYS Corp.*, No. 17-cv-06441-WHO, 2018 U.S. Dist. LEXIS 170332, at *9 (N.D. Cal. Oct 2, 2018) ("Publicly available information cannot be a material omission under federal securities laws.") (citations omitted). For example, courts have held that rosy statements about a company's future growth are not material in light of reports identifying concerns with that company's performance. *See Police Ret. Sys.*, 759 F.3d at 1060 (holding that a reasonable investor would have known the company's statements to be merely "corporate optimism" because "the market already knew" about underlying challenges). And vague profit forecasts are immaterial if it is "common knowledge" that the market was uncertain and the patent on the company's key product soon was expiring. *Rosenbaum v. Syntex Corp. (In re Syntex Corp. Sec. Litig.)*, 95 F.3d 922, 933–34 (9th Cir. 1996) (citation omitted).

Those are the circumstances here. The other information available to investors when the challenged statements were made undermine Plaintiff's allegations of materiality. Plaintiff describes Defendants' comments as material because, he contends, investors would rely on the positive information about the success of the Pilot Program and effectiveness of the BolaWrap. *See* Compl. ¶ 57.

- 17 -

But those comments were contextualized and clarified by the rest of Defendants' remarks made during the Earnings Call, which Plaintiff conspicuously omits from—and fails to attach to—the Amended Complaint.

Specifically, the Earnings Call began with Norris' admonition that "[t]he world ha[d] changed substantially," with the company facing an expanding pandemic and the market's reaction to it.  Ex. 4. at 2.  Wrap's demonstrations and training sessions were postponed or conducted virtually (which Norris explained was "not ideal") and the company was experiencing an overall "slowdown" in sales activities, *id*. at 3, particularly among large police departments, whose communities had implemented more restrictive lockdowns.  *Id*. at 6–7.  Moreover, Smith noted that new social distancing measures limited the circumstances in which police would engage with suspects, which Smith said was responsible in part for limiting the LAPD's use of the BolaWrap in the Pilot Program.  *Id*. at 11.  Smith expected the LAPD to extend the Pilot, however, given "the complications [they had] faced from the coronavirus."  *Id*. at 7.  When viewed in context, it is clear that Defendants' statements conveyed satisfaction with the progress of the Pilot Program *in light of* the unforeseen challenges posed by the unforeseen global Covid-19 pandemic.  Defendants also made clear, contrary to Plaintiff's assertions, that the company's financial success was not dependent on the LAPD's quick adoption of BolaWrap.  Norris reminded investors about Wrap's efforts to market to "both small and high profile law enforcement departments" to build a "strong pipeline of prospective customers."  *Id*. at 3.  Smith reported large international orders of BolaWrap (which "represent[ed] a large opportunity for Wrap") and a significant order backlog prior to March.  *Id*. at 5–6.  Smaller domestic markets also were a promising area of growth—indeed, the company's "bread and butter."  *Id*. at 6.  Despite the sales slowdown, departments nationwide (other than the LAPD) continued to deploy the BolaWrap and the company reported a considerable uptick in contracts from small departments.  *Id*. at 7, 13.

- 18 -

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

In sum, when Defendants' comments are viewed in context—as they must be—the challenged statements are immaterial, and, therefore, not actionable. A reasonable investor would not have relied on Rothans' enthusiasm for the Pilot Program's progress or assumed that his statements altered the "total mix" of available information, which tempered expectations in light of the COVID-19 pandemic and explained that the LAPD's satisfaction with the BolaWrap was not essential to the company's success. Consequently, the statements are not material, and they cannot support a Section 10(b) claim.

### 2. No Reasonable Investor Would Rely On The Statements Because They Were Mere Puffery.

Finally, and relatedly, the challenged statements are not actionable because they are immaterial puffery. Defendants can only be held liable under Section 10(b) for statements that "address specific aspects of a company's operation that the speaker knows to be performing poorly" or describe the state of affairs in "concrete," rather than "subjective or emotive," terms. *City of Miami v. Quality Sys. (In re Quality Sys.)*, 865 F.3d 1130, 1143–44 (9th Cir. 2017) (citation omitted). "[V]ague, generalized assertions of corporate optimism or statements of 'mere puffing' are not actionable material misrepresentations under federal securities laws." *In re Impac*, 554 F. Supp. 2d at 1096 (citing *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003)); *see also Police Ret. Sys.*, 759 F.3d at 1060 ("[O]ptimistic, subjective assessment hardly amounts to a securities violation.") (citations omitted). This is because a reasonable investor would not view statements such as "'good,' 'well-regarded,' or other feel good monikers" as significant information when making an investment decision. *Onie v. Conners (In re Cutera Sec. Litig.)*, 610 F.3d 1103, 1111 (9th Cir. 2010) (quotation omitted).

Defendants' statements that the Pilot results were "very good," the product was used "quite a bit," and the success rate was "really outstanding," are subjective and vague expressions of optimism and would not be material to a reasonable

- 19 -

investor.  For instance, the same statements the Ninth Circuit found to be not objectively verifiable in *Police Retirement System* also were merely "'feel good' speak" that amounted to "non-actionable puffing."[5] 759 F.3d at 1060 (citations omitted). And in *Lloyd v. CVB Financial Corp.*, the Ninth Circuit affirmed the district court's dismissal of a securities fraud claim based on "boasts" such as that the "'[t]he overall credit quality of the [company's] loan portfolio is sound'" and the company's "'credit metrics are superior' to those of its peers."  811 F.3d 1200, 1206–07 (9th Cir. 2016). "[P]rofessional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives."  *In re Cutera Sec. Litig.*, 610 F.3d at 1111 (quotation omitted).  The challenged statements would not have been relied upon by a reasonable investor when determining the future success of the BolaWrap; accordingly, they are not material, and cannot sustain Plaintiff's pleading burden.  *See, e.g.*, *In re Syntex Corp. Sec. Litig.*, 855 F. Supp. 1086, 1095 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996) (holding that the phrase "we're doing well and I think we have a great future" is inactionable puffing).  His claim should be dismissed.

### D.     Plaintiff Fails To Meet The Heightened Standard Of Pleading Scienter.

Finally, Plaintiff does not adequately plead scienter, which, like allegations concerning falsity, are subject to heightened pleading standards.  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020) (citing Fed. R. Civ. P. 9(b) and 15 U.S.C. § 78u-4(b)(2)(A)).  In order to adequately plead scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Zucco Partners, LLC v. Digimarc*

---

[5]     Some courts in the Ninth Circuit assess whether "puffing" statements satisfy the falsity, rather than materiality, element of pleading securities fraud, or conflate the two analyses.  This is because "'puffing'—expressing an opinion rather than a knowingly false statement of fact—is not misleading," and therefore cannot be false. *Hewlett-Packard Co.*, 845 F.3d at 1275 (citations omitted).  Either way, puffery is neither false nor material, and fails under either test.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

*Corp.*, 552 F.3d 981, 991 (9th Cir. 2000).  Put differently, plaintiff must allege that "the defendants made false or misleading statements either intentionally or with deliberate recklessness," where deliberate recklessness "is a form of intentional or knowing misconduct."  *Id.*  While "[m]ere recklessness or a motive to commit fraud and opportunity to do so may provide some reasonable inference of intent, they are not sufficient to establish a strong inference of deliberate recklessness."  *Id.*  In addition, the Court must weigh competing inferences, including plausible, non-culpable ones.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) (citation omitted).  A strong inference of scienter may be drawn "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.* at 326.

To begin, while Plaintiff's failures to adequately plead scienter are an independent grounds for dismissal, his inability to plead falsity as to Smith and Rothans' four purported misstatements—as set forth above—also taint his scienter claims.  *See Ziolkowski v. Netflix, Inc.*, No. 17-cv-01070-HSG, 2018 U.S. Dist. LEXIS 164641, at *12–13 (N.D. Cal. Sept. 25, 2018) ("Plaintiff's ability to plead facts showing Defendants acted with the requisite scienter is substantially hindered by his inability to plead the existence of a materially false or misleading statement or omission.").  While they are distinct elements of a securities fraud claim, "scienter and falsity inquiries overlap significantly." *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 808 (C.D. Cal. 2011); *see also In re Daou Sys.*, 411 F.3d 1006, 1015 (9th Cir. 2005) ("[B]ecause falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts[,] the two requirements may be combined into a unitary inquiry under the PSLRA.") (quotations omitted). Here, because the Amended Complaint does not sufficiently "allege that the defendants made false or misleading statements either intentionally or with

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

deliberate recklessness" with respect to the Pilot Program, scienter is not adequately pled. *In re Daou Sys.*, 411 F.3d at 1015.

The remaining scienter allegations are also insufficient. Plaintiff claims that Rothans spoke weekly with the LAPD during the Pilot Program, and, thus, was aware of the true usage rate and performance of the BolaWrap during the Earnings Call. Compl. ¶¶ 65–66. But this statement cannot give rise to a strong inference of scienter. Plaintiff does not allege these communications caused Rothans to draw a conclusion about the Pilot Program that differed from his remarks on the Earnings call, nor does he allege, even baldly, that those remarks were *intentionally* misleading or *deliberately* reckless. *Compare* Compl. ¶ 61 (describing Rothans' comments as "misleading and reckless"). Without these particularized allegations, there is no way to ascertain whether Rothans had "actual or constructive knowledge . . . that would cause [his] optimistic representations to the contrary to be consciously misleading." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) (quotation omitted); *see also In re Impac Mortg. Holdings, Inc*, 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008) ("Plaintiffs' assertion that [defendants] received spreadsheets and reports about the Company's performance on a weekly basis is insufficient to support an inference of scienter.") (quotations omitted). Similarly, Plaintiff's bald allegations that Defendants knew or deliberately disregarded that the challenged statements were materially false or misleading (*see, e.g.*, Compl. ¶¶ 78-80) are boilerplate and conclusory, and do not substantiate a strong inference of scienter. *See In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1176 (C.D. Cal. 2007) ("The [complaint] also includes a barrage of conclusory allegations . . . each of which fails to support scienter for fairly obvious reasons."); *In re Pixar Sec. Litig.*, 450 F. Supp. 2d 1096, 1099 (C.D. Cal. 2006) ("Conclusory allegations of law and unwarranted inferences, however, are insufficient to defeat a motion to dismiss.") (quotation omitted).

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Also missing from the Amended Complaint is any attempt to suggest a motive for Defendants' purported misstatements. The absence of such a motive, while not fatal, significantly weakens Plaintiff's scienter claim here. *See, e.g., Prodanova v. H.C. Wainwright & Co., LLC*, No. 19-56048, 2021 U.S. App. LEXIS 10124, at \*2 (9th Cir. Apr. 8, 2021) ("If the complaint fails to plead a plausible motive for the allegedly fraudulent action, the plaintiff will face a substantial hurdle in establishing scienter."). At best, Plaintiff suggests that the challenged statements were *material* because "Wrap is dependent on the BolaWrap to generate revenue," and "Wrap needed to show investors that it is still a good investment." Compl. ¶¶ 59-60. But these sorts of generalized interests are hardly sufficient to adequately plead scienter. *See, e.g.*, *Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) (holding that plaintiff's allegations regarding defendant's "motive to boost the company's profitability … are not 'specific' or 'particularized' as our precedents require."); *In re Rigel Pharms., Inc. Sec. Litig., Inter-Loc. Pension Fund GCC/IBT v. Deleage*, 697 F.3d 869, 884 (9th Cir. 2012) ("Allegations of routine corporate objectives such as the desire to obtain good financing and expand are not, without more, sufficient to allege scienter.") (citation omitted).

Finally, and to reiterate, Plaintiff's allegations supporting an inference of scienter must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Curry v. Yelp Inc.*, 875 F.3d 1219, 1226 (9th Cir. 2017) (quotation omitted). This inference should be drawn after viewing all of the allegations holistically, rather than in isolation. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007) (citations omitted). Here, the simplest and most innocent inference about the challenged statements is also the most plausible: Defendants believed that the Pilot Program was "going well" and "better than expected" because the LAPD's use of the BolaWrap actually exceeded their expectations, particularly in light of COVID-19 and their prior experience. Because Plaintiff has not "established that an inference of intentional or deliberately reckless

- 23 -

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

conduct is as compelling as an inference of nonculpable conduct," his securities fraud claim fails. *Prodanova*, 2021 U.S. App. LEXIS 10124, at *27; *see also In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1165 (C.D. Cal. 2007) (finding that the most reasonable inference to be drawn from defendants' statements was "cautious optimism, not fraud").

### E.   Plaintiff's Section 20 Claim Must Be Dismissed Because He Fails to Allege An Underlying Securities Violation.

Because Plaintiff fails to state a claim under Section 10(b), his Section 20 claim must be dismissed as well. "Section 20(a) of the Securities Exchange Act establishes that '[e]very person who, directly or indirectly, controls any person liable under [the Securities Exchange Act and its implementing regulations] shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable.'" *Webb v. SolarCity Corp.*, 884 F.3d 844, 858 (9th Cir. 2018) (quoting 15 U.S.C. § 78t(a)). A plaintiff suing under Section 20(a) must demonstrate: "(1) a primary violation of federal securities laws" and "(2) that the defendant exercised actual power or control over the primary violator." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (citation omitted). If the pleadings do not make out an underlying securities law violation, the Section 20 claim must be dismissed. *In re Rigel Pharms.*, 697 F.3d at 886; 15 U.S.C. §§ 77o, 78t(a). Here, "[b]ecause Plaintiffs failed to adequately plead a violation of the federal securities laws, it follows that Plaintiffs also failed to adequately plead violations of section 20(a)." *Barnes v. Edison Int'l*, No. 18-cv-09690 CBM(FFMx), slip. op. at 24 (C.D. Cal. Apr. 5, 2021) (citation omitted); *see also, e.g.*, *Webb*, 884 F.3d at 858.

- 24 -

Respectfully submitted,

Dated:  April 26, 2021                    **BALLARD SPAHR LLP**

By:  */s/ Scott S. Humphreys*
     Scott S. Humphreys
     M. Norman Goldberger (*pro hac vice*)
     Kahlil C. Williams (*pro hac vice*)

     *Attorneys for Defendants*

- 25 -
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS