Scott S. Humphreys (SBN 298021)
M. Norman Goldberger (*pro hac vice*)
Kahlil C. Williams (*pro hac vice*)
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, California 90067
Telephone: 424.204.4400
Facsimile: 424.204.4350
Email:  humphreyss@ballardspahr.com

1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215.665.8500
Facsimile: 215.864.8999
Email:  goldbergerm@ballardspahr.com
           williamskc@ballardspahr.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE WRAP TECHNOLOGIES, INC. SECURITIES EXCHANGE ACT LITIGATION | Case No. 2:20-CV-8760-DMG (PVCx) |
|  | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT** |
|  | Hearing: |
|  | Judge:   Hon. Dolly M. Gee |
|  | Date:    Friday, July 23, 2021 |
|  | Time:    9:30 a.m. |
|  | Place:   Courtroom 8C |

# TABLE OF CONTENTS

Page

**I.** THE AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE LOSS CAUSATION ...................................................................................2

    **A.** Plaintiff may not abandon the allegations in his Amended Complaint regarding an efficient market for Wrap securities. .............2

    **B.** Plaintiff has not sufficiently pled that the Seeking Alpha report provided new information to the market.................................................6

**II.** PLAINTIFF FAILS TO ALLEGE THAT DEFENDANTS MADE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS ......................8

    **A.** Defendants' challenged statements were not false or misleading. .......8

    **B.** Defendants' challenged statements are immaterial. ..........................11

**III.** PLAINTIFF FAILS TO MEET THE HEIGHTENED STANDARD OF PLEADING SCIENTER ................................................................................13

**IV.** PLAINTIFF'S REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED .....................................................................................................16

**V.** CONCLUSION .........................................................................................17

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Amgen Inc. Sec. Litig.*,
    544 F. Supp. 2d 1019 (C.D. Cal. 2008)....................................................................5

*Apple Inc. v. Allan & Assocs. Ltd.*,
    445 F. Supp. 3d 42 (N.D. Cal. 2020)......................................................................3

*Basic, Inc. v. Levinson*,
    485 U.S. 224 (1988) ............................................................................................1, 4

*Bennett v. H&R Block Fin. Advisors*,
    No. 04-cv-4848-MHP, 2005 U.S. Dist. LEXIS 60273 (N.D. Cal.
    May 31, 2005)........................................................................................................4

*In re BofI Holding, Inc. Sec. Litig.*,
    977 F.3d 781 (9th Cir. 2020)..............................................................................6, 7

*Brown v. China Integrated Energy, Inc.*,
    No. 11-cv-02559-BRO, 2015 U.S. Dist. LEXIS 19177 (C.D. Cal.
    Feb. 17, 2015).......................................................................................................4

*Chaset v. Fleer/Skybox Int'l*,
    300 F.3d 1083 (9th Cir. 2002)..............................................................................17

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align
    Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017) ..........................................................................10, 11

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
    880 F. Supp. 2d 1045 (N.D. Cal. 2012).................................................................12

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
    355 F. Supp. 2d 1069 (N.D. Cal. 2005).................................................................12

*Curry v. Yelp, Inc.*,
    875 F.3d 1219 (9th Cir. 2017)..............................................................................16

*Desai v. Deutsche Bank*,
    573 F.3d 931 (9th Cir. 2009).................................................................................4

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

*Edwards v. Leaders in Cmty. Alts., Inc.*,
No. 20-cv-15070, 2021 U.S. App. LEXIS 9647 (9th Cir. Apr. 2,
2021) ............................................................................................................... 16

*Ferreira v. Funko Inc.*,
No. 20-cv-02319-VAP, 2021 U.S. Dist. LEXIS 59102 (C.D. Cal.
Feb. 25, 2021) ................................................................................................. 10

*In re GenesisIntermedia, Inc. Secs. Litig.*,
No. 01-cv-9024-SVW, 2007 U.S. Dist. LEXIS 95253 (C.D. Cal.
Jun. 28, 2007) .................................................................................................... 4

*Golub v. Gigamon Inc.*,
847 F. App'x 368 (9th Cir. 2021) ...................................................................... 8

*In re Herbalife, Ltd. Sec. Litig.*,
No. 14-cv-2850-DSF, 2015 U.S. Dist. LEXIS 37109 (C.D. Cal.
Mar. 16, 2015) ................................................................................................... 8

*Ikeda v. Baidu, Inc.*,
No. 20-cv-02768-LHK, 2021 U.S. Dist. LEXIS 67829 (N.D. Cal.
Apr. 7, 2021) .................................................................................................... 11

*In re Impac Mortg. Holdings, Inc.*,
554 F. Supp. 2d 1083 (C.D. Cal. 2008) ........................................................... 12

*In re Intrexon Corp. Sec. Litig.*,
No. 16-cv-02398-RS, 2017 U.S. Dist. LEXIS 26401 (N.D. Cal. Feb.
24, 2017) .................................................................................................. 3, 8, 13

*Jackson v. Loews Hotels, Inc.*,
No. 18-cv-827-DMG, 2019 U.S. Dist. LEXIS 124525 (C.D. Cal.
July 24, 2019) .................................................................................................... 3

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ............................................................................. 8

*Kovtun v. Vivus, Inc.*,
No. 10-cv-4957-PJH, 2012 U.S. Dist. LEXIS 139548 (N.D. Cal.
Sept. 27, 2012) ................................................................................................. 15

*In re LeapFrog Enters., Inc. Sec. Litig.*,
527 F. Supp. 2d 1033 (N.D. Cal. 2007) ........................................................... 12

- iii -

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) .......................................................................... 16, 17

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) .................................................................................. 4

*In re Massey Energy Co. Sec. Litig.*,
883 F. Supp. 2d 597 (S.D. W. Va. 2012) ............................................................... 5

*Masterson v. Cheetah Mobile, Inc.*,
No. 17-cv-8141-R, 2018 U.S. Dist. LEXIS 221793 (C.D. Cal. June
27, 2018) .............................................................................................................. 11

*In re Metawave Communs. Corp. Sec. Litig.*,
298 F. Supp. 2d 1056 (W.D. Wa. 2003) ............................................................... 17

*Mulligan v. Impax Labs., Inc.*,
36 F. Supp. 3d 942 (N.D. Cal. 2014) .................................................................... 13

*In re Nektar Therapeutics*,
No. 18-cv-06607-HSG, 2020 U.S. Dist. LEXIS 122715 (N.D. Cal.
July 13, 2020) ........................................................................................................ 8

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) .......................................................................... 14, 16

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015) ......................................................................................... 9, 10

*Onie v. Conners (In re Cutera Sec. Litig.)*,
610 F.3d 1103 (9th Cir. 2010) .............................................................................. 12

*In re Pivotal Sec. Litig.*,
No. 19-cv-03589-CRB, 2020 U.S. Dist. LEXIS 128696 (N.D. Cal.
July 21, 2020) ........................................................................................................ 9

*In re Pixar Sec. Litig.*,
450 F. Supp. 2d 1096 (N.D. Cal. 2006) ................................................................ 13

*Plumley v. Sempra Energy*,
847 Fed. Appx. 426 (9th Cir. 2021) ..................................................................... 14

*Prodanova v. H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021) .............................................................................. 14

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

*In re Questcor Sec. Litig.*,
  No. 12-cv-01623-DMG, 2013 U.S. Dist. LEXIS 142865 (C.D. Cal.
  Oct. 1, 2013) ............................................................................................................ 7, 15

*Reese v. Malone*,
  747 F.3d 557 (9th Cir. 2014) .................................................................................. 15

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*,
  845 F.3d 1268 (9th Cir. 2017) ................................................................................ 10

*In re Rigel Pharms., Inc. Sec. Litig., Inter-Loc. Pension Fund GCC/IBT v. Deleage*,
  697 F.3d 869 (9th Cir. 2012) .................................................................................. 14

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) .................................................................................. 16

*Rosenbaum v. Syntex Corp. (In re Syntex Corp. Sec. Litig.)*,
  95 F.3d 922 (9th Cir. 1996) .................................................................................... 12

*Sanchez v. IXYS Corp.*,
  No. 17-cv-06441-WHO, 2018 U.S. Dist. LEXIS 170332 (N.D. Cal.
  Oct. 2, 2018) ........................................................................................................... 11

*SEC v. Wash. Inv. Network*,
  475 F.3d 392 (D.C. Cir. 2007) .................................................................................. 5

*Webb v. SolarCity Corp.*,
  884 F.3d 844 (9th Cir. 2018) .................................................................................. 14

*In re Wet Seal, Inc. Sec. Litig.*,
  518 F. Supp. 2d 1148 (C.D. Cal. 2007) .................................................................. 12

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) .................................................................................. 9

*Ziolkowski v. Netflix, Inc.*,
  No. 17-cv-01070-HSG, 2018 U.S. Dist. LEXIS 164641 (N.D. Cal.
  Sept. 25, 2018) ....................................................................................................... 13

**Other Authorities**

Federal Rule of Civil Procedure 15(a) ........................................................................ 16

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

In their opening brief ("Br."), Defendants demonstrated that Plaintiff's securities fraud claims should be dismissed for several reasons.  Specifically, the Amended Complaint[1] does not: (i) plausibly allege loss causation; (ii) identify a single false statement; (iii) identify any material misstatements of fact; or (iv) plead that any of Defendants' statements were uttered with the requisite scienter.

Plaintiff's opposition brief ("Opp. Br.") does not adequately any address these deficiencies, and, in some instances, substitutes one fatal defect for another.  First, the Amended Complaint makes boilerplate allegations that Defendants have committed fraud on the market, entitling him to the presumption of reliance outlined in *Basic, Inc. v. Levinson*, 485 U.S. 224, 249 (1988).  However, because that theory of reliance presumes that the stock traded in an efficient market—where all publicly available information is incorporated into the stock price—he cannot claim in his brief ("Opp. Br.") that the market for Wrap securities to absorb information that was widely publicized.  Plaintiff's revised theory fails both because he is not permitted to amend his pleadings by way of a brief *and* because such a revision would result in an inadequate pleading of reliance (which would also require dismissal).

Next, Plaintiff attempts to contort the statements of opinion about the Pilot Program into statements of fact, ignoring clear guidance from federal courts that he state, *with particularity*, why a challenged statement is objectively or verifiably untrue, or why the speaker did not actually hold the expressed opinion.  Plaintiff cannot survive a motion to dismiss by stating, baldly, that Defendants could not have believed what they said; Plaintiff must plead facts tending to show that Defendants *did* not believe it.  Moreover, the opinion statements identified by Plaintiff—that the BolaWrap was used "more than we anticipated" and the "success rate has been really outstanding"—are precisely the sort of vague, optimistic statements that courts routinely deem as inactionable puffery.

---

[1] Capitalized terms have the meaning defined herein or in Defendants' Opening Brief.

- 1 -

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Finally, and relatedly, the Amended Complaint is devoid of any allegations that evince scienter.  Plaintiff repeatedly asserts that Defendants must have been aware of certain facts regarding the Pilot Program, or, alternatively, that Defendants could not have believed what they said.  But these assertions do not meet the pleading standards under the PSLRA or the Federal Rules of Civil Procedure, which require a plaintiff to plead, with particularity, that Defendants possessed a mental state intending to deceive.  Plaintiff offers no basis for inferring that any statement was uttered with the intent to trick investors or mislead the market.  Instead, the statements by Wrap officials, couched in the appropriate context, lead to a far more plausible inference: given the length of time police departments may take to adopt new technologies *and* a marked decrease in interactions between suspects and police due to COVID-19, the Pilot Program produced results that were worthy of optimism on an investor call, rather than inclusion in a securities fraud complaint.  For the reasons set forth in the Opening Brief and below, the Amended Complaint should be dismissed with prejudice.

## I.   THE AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE LOSS CAUSATION

### A.   *Plaintiff may not abandon the allegations in his Amended Complaint regarding an efficient market for Wrap securities.*

In response to Defendants' showing that Plaintiff's theory of loss causation was without merit (Br. 5-10), Plaintiff has abandoned his pleadings concerning an efficient market for Wrap securities and now asserts that: 1) the market for Wrap securities failed to properly absorb publicly-available information and 2) the average investor would not have availed herself of that information before reading the *Seeking Alpha* post on September 23, 2020.  (Opp. Br. 8-10.)  Plaintiff's latest theory, which directly contradicts his allegations in the Amended Complaint, is proffered in order to evade the obvious: the "truth" about the BolaWrap was disclosed on August 25, 2020, when the LAPD Report was publicly released and covered by the media, and an efficient market absorbed the information into the

- 2 -

stock price immediately.  By contrast, the stock drop on September 23, 2020, was caused by the opinions of a short seller, which were published on *Seeking Alpha* with the intent of damaging Wrap's share price.[2]

The opinions in the *Seeking Alpha* Post, however negative, provided no new information to the market, and, thus, cannot be considered a corrective disclosure that supports Plaintiff's loss causation claim.  The Post merely repackaged information from the LAPD Report, and arrived at the exact same conclusions as those announced weeks earlier in the *Los Angeles Daily News* (which were apparent to anyone who reviewed the LAPD Report): the LAPD used the BolaWrap nine times during the Pilot Program, and, while the device was effectively deployed six times, it only fully wrapped around a suspect once.

It should be noted that Plaintiff's novel legal and factual theories cannot be raised, for the first time, in his opposition brief.  *See, e.g.*, *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation omitted); *Jackson v. Loews Hotels, Inc.*, No. 18-cv-827-DMG, 2019 U.S. Dist. LEXIS 124525, at *10-11 (C.D. Cal. July 24, 2019) (same).  And even if Plaintiff could now claim that Wrap's securities traded in an inefficient market, or that the average investor would not have been aware of widely public information, those assertions are directly contradicted by Plaintiff's own allegations.

First, the Amended Complaint explicitly acknowledges an efficient market for Wrap securities. *See* Compl. ¶ 74 ("[T]he market for Wrap common stock promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the securities."). Plaintiff

---

[2]   To the degree Plaintiff bases his 10b-5 claim on the fact that the stock price dropped sharply on September 23, 2020, *see* Opp. Br. 10-11, that argument should be dismissed as fraud by hindsight. *See In re Intrexon Corp. Sec. Litig.*, No. 16-cv-02398-RS, 2017 U.S. Dist. LEXIS 26401, at *14 (N.D. Cal. Feb. 24, 2017) ("[A] plaintiff cannot show that a prior statement was false or misleading merely by pointing to the market reaction upon a subsequent disclosure of information.").

- 3 -

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

makes these allegations in order to avail himself of the presumption of reliance, where "the price of a company's stock is determined by the available material information regarding the company and its business," and reliance is established where misstatements "defraud purchasers of stock[,] even if the purchasers do not directly rely on the misstatements." *Basic, Inc.*, 485 U.S. at 241-42; *see also Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014) (noting that reliance is typically established "via a presumption that the price of publicly-traded securities reflects all information in the public domain"). Indeed, fraud on the market, efficient markets, and the presumption of reliance are inextricably linked. *See Desai v. Deutsche Bank*, 573 F.3d 931, 941 (9th Cir. 2009) (noting that an acknowledgement by investors that the market was inefficient "would amount to a fatal concession" on reliance); *In re GenesisIntermedia, Inc. Secs. Litig.*, No. 01-cv-9024-SVW, 2007 U.S. Dist. LEXIS 95253, at *18 (C.D. Cal. Jun. 28, 2007) ("[T]he fraud-on-the-market theory only applies to efficient markets."). This Court should not countenance Plaintiff's attempt to have it both ways: he is either wedded to a fraud-on-the-market theory and reliance on an efficient market, or he must plead direct reliance on Defendants' statements, which he has not done, and in any event, would bar class certification. *See Bennett v. H&R Block Fin. Advisors*, No. 04-cv-4848-MHP, 2005 U.S. Dist. LEXIS 60273, at *13-14 (N.D. Cal. May 31, 2005) ("This court cannot see how plaintiffs can plead, on the one hand, a 'fraud-on-the-market' and efficient market theory of liability in order to avoid pleading individual reliance on defendant's representations, and on the other, plead that the relevant market is only [certain investors]."); *Brown v. China Integrated Energy, Inc.*, No. 11-cv-02559-BRO, 2015 U.S. Dist. LEXIS 19177, at *11 (C.D. Cal. Feb. 17, 2015) ("And even were it feasible to prove direct reliance individually for each member of the class, class certification would be improper under Rule 23(b)(3) because individual issues would predominate over common ones."). By Plaintiff's own pleadings, the market

- 4 -

for Wrap securities was efficient, and promptly incorporated all market information regarding the LAPD Report into the stock price on August 25, 2020.

Plaintiff's second attempt at revising his causation theory fares no better. Plaintiff cites to three cases for the proposition that public information unavailable to the "average investor" can negate a defense that such information had been disclosed.  Opp Br. 8-11; *see also SEC v. Wash. Inv. Network*, 475 F.3d 392 (D.C. Cir. 2007); *In re Massey Energy Co. Sec. Litig.*, 883 F. Supp. 2d 597 (S.D. W. Va. 2012); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1019 (C.D. Cal. 2008).  But those cases are of no help to Plaintiff in this case.  To begin, *Washington* involves the disclosure obligations of investment advisers to their clients under the Investment Advisors Act of 1940, and, thus, is totally inapplicable here.  Next, in *Massey*, the court weighed whether to consider (and take judicial notice of) certain information that, in defendants' view, satisfied their disclosure obligations. 883 F. Supp. 2d at 612. The court declined to do so, ruling that information was not directly at issue and was drawn from screenshots of "web-pages and an online-search function that was not available" during the class period. *Id.* at 612, 616. Similarly, in *Amgen*, this Court ruled that publication in the *Federal Register* of an *agenda* for an FDA meeting was not, at the motion-to-dismiss phase, enough to avoid liability.  544 F. Supp. 2d at 1025.  Here, the facts of this case are far different because, as Plaintiff concedes, the specific information requiring disclosure (*i.e.*, the results of the Pilot Program) was available on the internet and widely reported in the press on August 25, 2020.  Compl. ¶¶ 49-50; Opp. Br. 9-10.

In any event, the "average investor" is irrelevant in a fraud-on-the-*market* analysis, which Plaintiff readily accepts by pleading, among other things, that Wrap "regularly communicated with public investors via established market communication mechanisms" and "the Company was followed by a number of securities analysts…who wrote reports that were widely distributed and publicly available."  Compl. ¶ 73.  Moreover, as noted below, this Circuit recently articulated

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

a standard for determining whether information is sufficiently public for loss causation purposes, which includes the "complexity of the data" and the "great effort needed to locate and analyze it." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 795 (9th Cir. 2020). Thus, rather than relying on inapposite or outdated case law, this Court can simply apply the test established in *BofI Holding*, which focuses on the efforts of *those performing the analysis*, rather than the hypothetical knowledge of an undefined "average investor." *See id.* at 797 (discussing the efforts of blog post authors to analyze publicly-available information).

### B.     *Plaintiff has not sufficiently pled that the* **Seeking Alpha** *report provided new information to the market.*

Plaintiff has also misconstrued Defendants' arguments concerning the types of information that may qualify as a corrective disclosure. In their opening brief, Defendants fully acknowledged this Circuit's willingness to consider short-seller reports—or other compilations of publicly-available information—as corrective disclosures. Br. at 6. However, Defendants then showed why the *Seeking Alpha* Post could not meet the standard outlined in *In re BofI Holding*, 977 F.3d at 795, which evaluates whether certain disclosures are, in fact, "corrective," based on whether the underlying data is publicly available, requires complex analysis, or is difficult to locate. (Br. at 6-10.) Stated simply, compilations of publicly-available information can qualify as corrective disclosures in rare instances, but not where, as here, the underlying information is not complex, has been widely disseminated and requires no expert analysis of any kind. *In re BofI Holding*, 977 F.3d at 795. And while Plaintiff has stated, conclusorily, that the market didn't "learn[] of the adverse information contained in the [LAPD Report]" until the *Seeking Alpha* publication, Opp. Br. 11, he has failed to "plead with particularity facts plausibly explaining why the [information from the LAPD Report] was not yet reflected in the stock price." *In re BofI Holding*, 977 F.3d at 794.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Plaintiff cites to *In re Questcor Sec. Litig.*, No. 12-cv-01623-DMG, 2013 U.S. Dist. LEXIS 142865 (C.D. Cal. Oct. 1, 2013) as support for his position that a short seller report may be a corrective disclosure. (Opp. Br. 11.) Whether or not a short seller was responsible for the disclosure at issue,[3] the central question in *Questcor*, as here, was whether publicly-available information was in the market before the alleged corrective report was published. As this Court is aware, Questcor was alleged to have engaged in aggressive marketing of the drug Acthar as a treatment for a kidney disease, and to have made numerous statements to investors about sustained demand for the drug and high coverage by insurers. However, those statements were undermined by a bulletin issued by Aetna Insurance and a report from Citron Research, each of which disclosed, for the first time, that Questcor's prior statements were misleading because Acthar was not medically necessary for several indications (including the kidney disease), and would no longer be reimbursed by Aetna. *In re Questcor*, 2013 U.S. Dist. LEXIS 142865, at *64. In short, this Court determined that the Citron Report, in combination with the Aetna bulletin, constituted a corrective disclosure because it provided new information to the market regarding the actual demand for Acthar. *Questcor*, then, is wholly in keeping with the standard established in *In re BofI Holding*, but it is inapplicable here, where Plaintiff does not—and cannot—articulate a shred of new information that the *Seeking Alpha* Post provided to the market.

In sum, Plaintiff cannot have the benefit of the presumption that the market "promptly digested" information about the Company "from all publicly available sources" on August 25, 2020 without conceding that an efficient market absorbed

---

[3] Despite Plaintiff's arguments to the contrary, *Questcor* did not explicitly make a finding as to whether Citron Research was a short seller. In addition, the Citron report at issue in *Questcor* made no representation about whether the author had a short position in Questcor stock, and did not disclaim its analysis as mere opinion. By contrast, the author of the *Seeking Alpha* Post openly acknowledged their short position in Wrap, and noted that the post "expresses my own opinions." Williams Decl. Ex. 9.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

the information in the LAPD Report well before the *Seeking Alpha* Post was published. The *Seeking Alpha* report recounted the same conclusions, based on uncomplicated data, made widely public weeks earlier by the LAPD and the press, and, thus, cannot constitute a corrective disclosure. Plaintiff's loss causation claim must fail, and may properly be dismissed at this stage. *See, e.g.*, *In re Nektar Therapeutics*, No. 18-cv-06607-HSG, 2020 U.S. Dist. LEXIS 122715, at *55-56 (N.D. Cal. July 13, 2020) (granting motion to dismiss on loss causation grounds because report comprised of public-available data did not "constitute new information unknown to the market"); *In re Intrexon Corp. Sec. Litig.*, No. 16-cv-02398-RS, 2017 U.S. Dist. LEXIS 26401, at *24 (N.D. Cal. Feb. 24, 2017) (ruling that loss causation was not plead where report that "only collected and opined on already public information" did not constitute disclosure of the truth as required for a corrective disclosure); *In re Herbalife, Ltd. Sec. Litig.*, No. 14-cv-2850-DSF, 2015 U.S. Dist. LEXIS 37109, at *17 (C.D. Cal. Mar. 16, 2015) (dismissing complaint on loss causation grounds, in part because purported corrective disclosures were publicly available and introduced no new information to the market).

## II. PLAINTIFF FAILS TO ALLEGE THAT DEFENDANTS MADE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS

### A. Defendants' challenged statements were not false or misleading.

Defendants have also shown that Plaintiff, under a heightened pleading standard, cannot identify a single false or misleading statement by Defendants. (Br. 11-20). Importantly, it is not enough to simply allege that a statement is wrong; he must plead facts "tending to exclude the possibility that" the statement is true. *Golub v. Gigamon Inc.*, 847 F. App'x 368, 372 (9th Cir. 2021) (quotation omitted). He can do this by alleging particularized information showing that "defendant's statements . . . *directly contradict[ed]* what . . . [he] knew at that time." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (emphasis added). However, Plaintiff makes no such pleading here. At best, Plaintiff asserts that,

pursuant to the BolaWrap trial, the LAPD trained 1100 officers to use the 200 BolaWraps it received. Compl. ¶ 54. During the trial, the LAPD used the BolaWrap nine times, and, in six of those uses, the device was deemed effective. Compl. ¶ 55. Among all uses during the trial, the BolaWrap completely wrapped a fleeing suspect once. *Id.* On the basis of these cherry-picked data points (all of which were available in the LAPD Report), Plaintiff argues that Defendants' optimistic comments—that the LAPD was using the BolaWrap "quite a bit" and the trial success rate was "really outstanding"—are actionable as false statements of fact rather than statements of opinion.[4] (*See* Opp. Br. 11-16).

However, his reliance on *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015) provides him little support because Rothans' comments are decidedly *not* like the Supreme Court's example "the coffee is hot." (*See* Opp. Br. 13 (citing *Omnicare*, 575 U.S. at 183)). Put simply, Rothans' vaguely optimistic statements about the BolaWrap are not "determinate" or "verifiable," which are the qualities the Court ascribes to factual statements, *id.* at 184, and the standard used by courts since *Omnicare* to distinguish factual assertions from opinions. *See, e.g.*, *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1196 (9th Cir. 2021) (agreeing with lower court that asserting that "'great progress' was being made on battery production" would be actionable only if the company was "'making *no progress at all*'" (emphasis added)); *In re Pivotal Sec. Litig.*, No. 19-cv-03589-CRB, 2020 U.S. Dist. LEXIS 128696, at *39-42 (N.D. Cal. July 21, 2020) ("'Overall, we are pleased with our . . . [financial] outlook'" and "'feeling very good about the number of new customers and logos'" constituted statements of opinion). Because Rothans' comments are also not "capable of objective verification," they

---

[4] Plaintiff argues only that Rothans' two statements are false and seemingly abandons his contention that Smith's accompanying statement—that LAPD used BolaWrap "more than we anticipated in the trial period," Compl. ¶ 45—is false or misleading. Reasonably so, as Plaintiff nowhere alleges the amount of uses Defendants anticipated for the pilot, a fact without which he cannot adequately plead that Smith's comment is false.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

are not actionable.[5] *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017).

Even if they were objectively verifiable, statements of opinion are only actionable in certain circumstances. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017) (summarizing the "standards for pleading falsity of opinion statements").[6] Plaintiff has chosen to attack these statements on an "omissions theory of liability," *id.* at 615, arguing that Defendants' failure to disclose the details of the BolaWrap trial, later published in the LAPD Report, rendered Rothans' optimistic assessment misleading. Pleading falsity under this theory is "no small task." *Id.* at 615 (quoting *Omnicare*, 575 U.S. at 194). "It is not sufficient that an investor merely considered the omitted information significant." *Ferreira v. Funko Inc.*, No. 20-cv-02319VAP, 2021 U.S. Dist. LEXIS 59102, at *35 (C.D. Cal. Feb. 25, 2021) (quotation and alteration omitted). Rather, the alleged omission must "call into question the issuer's basis for offering the opinion." *Dearborn Heights*, 865 F.3d at 618 (quoting *Omnicare*, 575 U.S. at 194).

Stated differently, Plaintiff is required to state, in a non-conclusory manner, *why* the LAPD Report signaled a failure. Plaintiff cannot meet this burden. The Amended Complaint does not allege that the use of the BolaWrap failed to meet any

---

[5] Plaintiff contests this, at first, by arguing that Rothans' utterance of "in fact" made his statement factual. (*See* Opp. Br. at 12). Of course, he cites no case law supporting this, because a speaker's saying "in fact" does not entail that he is making a factual statement. Neither does it presuppose a statement of fact just because the speaker *does not say* "I think" or something similar. *Cf. Omnicare*, 575 U.S. at 185 (noting that "I believe" statements can state facts). There is no linguistic formula for uttering a fact or opinion.

[6] According to the court in *Dearborn Heights*, there are "three ways for a plaintiff to plead that an opinion is false," including that the opinion was objectively and subjectively untrue, that the asserted opinion contained an untrue or misleading statement of fact, or that the opinion misleadingly omitted material information, in which case the plaintiff must allege "facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." 856 F.3d at 615-16 (summarizing and quoting *Omnicare*).

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

of the Company's internal projections, nor does it provide any information about the expected pace of BolaWrap adoption, any knowledge about LAPD's decision to extend the pilot, or any other information relevant to gauging the trial's success. Without such details, Defendants' alleged omissions are not sufficient to "call into question" Rothans' basis for his opinion. *Dearborn Heights*, 856 F.3d at 618. Accordingly, Plaintiff fails to state a claim. *See, e.g.*, *Masterson v. Cheetah Mobile, Inc.*, No. 17-cv-8141-R, 2018 U.S. Dist. LEXIS 221793, at *4 (C.D. Cal. June 27, 2018) (allegations that defendant lied about using "click farms" to drive website ad revenue were deficient because "[p]laintiff does not allege, for example, who directed the purchase of click farms, how the click farms were acquired, where the click farms were acquired, how many click farms were used, or when [defendant] began using click farms").

Plaintiff's further argument that Defendants had a duty to correct Rothans' prior statements during investor conferences in September does not save his claim. (Opp. Br. 15). As Defendants stated in their opening brief, Defendants had no duty to correct Rothans' comments because those comments were not false (Br. 11-12 n.2). Moreover, securities law does not burden speakers with the disclosure of publically available information, so Defendants had no obligation to disclose in September what was publically available in August. *Ikeda v. Baidu, Inc.*, No. 20-cv-02768-LHK, 2021 U.S. Dist. LEXIS 67829, at *28-29 (N.D. Cal. Apr. 7, 2021) (collecting cases).

### B. Defendants' challenged statements are immaterial.

Nor has Plaintiff adequately alleged that any of the challenged statements were material. He cannot do so, both because that Rothans' alleged omission involved publically available information, *Sanchez v. IXYS Corp.*, No. 17-cv-06441-WHO, 2018 U.S. Dist. LEXIS 170332, at *9 (N.D. Cal. Oct. 2, 2018), and that the economic impact of COVID-19 on all businesses, including Wrap's, was "common knowledge," *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 933-34 (9th Cir. 1996).

- 11 -

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

And besides, Plaintiff's view that an investor would take Rothans to mean that the Pilot was a success "*despite* COVID," (Opp. Br. 16), is unsupported by case law and disregards all of the *other* information Defendants presented at the Earnings Call that "contextualized" Rothans' comments, including that the Company's financial success was *not* dependent on the LAPD trial.  (*See* Br. 18-19).  In light of the "total mix of . . . information" available to investors, none could have viewed the statements with the importance that Plaintiff seeks to bestow upon them.  *See In re Impac Mortg. Holdings, Inc.*, 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008) (quotations omitted).

Finally, Plaintiff's contention that Rothans' statements are more than mere puffery ignores the abundance of case law identifying similar vague and optimistic assertions to be immaterial and not actionable.  Such assertions include: "good" or "well-regarded," *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010); "business couldn't be better," "industry-leading," "strong," "robust," "well positioned," "solid," and "improved," *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1168 (C.D. Cal. 2007); "statements projecting 'excellent results,' a 'blowout winner' product, 'significant sales gains,' and '10% to 30% growth rate over the next several years,'" *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1087 (N.D. Cal. 2005); "[t]his is going to be a very big second half for us," *In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1050 (N.D. Cal. 2007); and statements that a "company has 'strong demand metrics and good momentum' and 'our demand indicators are strong, our product portfolio is robust,'" *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1064 (N.D. Cal. 2012).  The lone opinion Plaintiff does cite—*Mulligan v. Impax Labs., Inc.*—borrows heavily from out-of-Circuit decisions and is distinguishable in any case because the challenged statements there were not puffery or even opinions but were, as alleged, outright lies.  *See* 36 F. Supp. 3d 942, 966-68 (N.D. Cal. 2014) (statements about efforts to rectify regulatory noncompliance were

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

actionable where the defendant did *not* take such efforts and knew about other critical noncompliance issues).  Plaintiff fails to adequately plead that Defendants' statements and purported omissions were false or material, and his claims should be dismissed on both accounts.

## III.   PLAINTIFF FAILS TO MEET THE HEIGHTENED STANDARD OF PLEADING SCIENTER

Finally, Defendants have shown that none of the statements identified by Plaintiff evince a "strong inference" of scienter as required by the heightened pleading standards of the PSLRA and the Federal Rules of Civil Procedure.  (Br. 20-24).  As noted above, because these threadbare allegations do not support an inference that any of Defendants' statements were false; the pleadings similarly lack the requisite specificity to denote scienter.  *See Ziolkowski v. Netflix, Inc.*, No. 17-cv-01070HSG, 2018 U.S. Dist. LEXIS 164641, at *12-13 (N.D. Cal. Sept. 25, 2018) ("Plaintiff's ability to plead facts showing Defendants acted with the requisite scienter is substantially hindered by his inability to plead the existence of a materially false or misleading statement or omission."); *In re Intrexon Corp. Secs. Litig.*, 2017 U.S. Dist. LEXIS 26401, at *22 ("[T]hese opinions are insufficient to make the inference of a material misrepresentation and likewise fail to suggest scienter.").  The Amended Complaint does not contain a single specific allegation that Smith and Rothans made *deliberately* reckless or *intentionally* misleading statements.  Instead, Plaintiff merely asserts, without more, that Rothans and Smith knew the "true progress" of the Pilot Program and the "true performance" of the BolaWrap, as gleaned from conversations with the LAPD.  Notwithstanding those assertions, Plaintiff's "conclusory allegations of law and unwarranted inferences" are insufficient to defeat a motion to dismiss.  *In re Pixar Sec. Litig.*, 450 F. Supp. 2d 1096, 1099 (N.D. Cal. 2006); *see also Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020) (explaining that to properly allege scienter, the complaint must allege that defendants made false or misleading statements either intentionally or

- 13 -

with deliberate recklessness, and that deliberate recklessness is more than "mere recklessness or a motive to commit fraud" (quoting *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016))).

Plaintiff's failure to plead any "compelling and particularized facts showing fraudulent intent or deliberate recklessness" is particularly problematic because those pleadings are necessary for this Court to overlook his failure to allege a compelling motive to deceive investors. *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021) (quoting *Nguyen*, 962 F.3d at 415). At best, Plaintiff alleges that "Wrap needed to show investors that it is still a good investment," and that "the actual performance of the BolaWrap was of critical importance to investors."[7] Compl. ¶¶ 59-60. But pleadings that a company wants to be profitable or successful are woefully insufficient to evince scienter. *See, e.g.*, *Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) (plaintiff's allegations of defendant's "motive to boost" the company's profitability are not sufficiently particularized); *Plumley v. Sempra Energy*, 847 F. App'x 426, 429 (9th Cir. 2021) ("claims of financial motivation" represent the "'routine corporate objectives'" that the Ninth Circuit has rejected in the past (quoting *Webb*, 994 F.3d at 856)); *In re Rigel Pharms., Inc. Sec. Litig., Inter-Loc. Pension Fund GCC/IBT v. Deleage*, 697 F.3d 869, 884 (9th Cir. 2012) (same).

Further, laintiff's heavy reliance on the "core operations" inference is misguided and, again, mischaracterizes the holdings of this Court. Plaintiff cites *Reese v. Malone* and *In re Questcor Sec. Litig.* for the proposition that "[t]he Ninth Circuit permits an inference of scienter where, as here, the alleged fraud concerns a business's core operations." (Opp. Br. 18 (citing *Reese v. Malone*, 747 F.3d 557,

---

[7] Plaintiff notes in his brief that Wrap wanted to be able to say that one of the world's largest and most sophisticated police departments is testing the BolaWrap [as] a major boon to Wrap's credibility and marketing efforts." (Opp. Br. 19). Again, he is not permitted to amend his pleadings through the brief, and, the motive is far too generalized to plead scienter.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

575 (9th Cir. 2014) and *In re Questcor Sec. Litig.*, No. 12-cv-01623-DMG, 2013 U.S. Dist. LEXIS 142865, at \*57-58 (C.D. Cal. Oct. 1, 2013))). *Reese* is not analogous here because the court drew this inference only after determining that it would have been *absurd* for the speaker not to have been aware of knowledge contradicting her statement. 747 F.3d at 576 (emphasis added). Plaintiff makes no such assertion, nor has he alleged that Rothans was aware of any fact that would have rendered his statements about the Pilot Program untrue. *See supra* II.A. As for *Questcor*, this Court's discussion of scienter in that case makes clear that "a plaintiff may not rely *only* on the core-operations inference to plead scienter." 2013 U.S. Dist. LEXIS 142865, at \*58 (emphasis in original). Instead, this Court evaluated *several* factors to determine whether scienter was sufficiently alleged, including: (1) the defendants' suspicious insider trading activity; (2) the defendant company's repurchase of 6 million shares during the relevant period; (3) the compelling motive to commit fraud, including the defendants' incentive compensation plans and opportunity for financial gain; and (4) the defendants' involvement in the company's core operations. *Id.* at \*43-58. Because Plaintiff has barely even attempted to plead a motive for Defendants' statements, he has nothing that he can attach to a core operations inference, which, in any event, is unwarranted.

Finally, it is "[P]laintiff's burden to show a strong inference of scienter, which inference is both cogent and compelling, and as plausible as any non-culpable inference that defendants' optimism was honest." *Kovtun v. Vivus, Inc.*, No. 10-cv-4957-PJH, 2012 U.S. Dist. LEXIS 139548, at \*61 (N.D. Cal. Sept. 27, 2012) (alteration omitted). Even when all of Plaintiff's allegations are viewed holistically, they cannot support an inference of scienter that is equally or more plausible than the most obvious, non-culpable one: Defendants expressed optimism about the BolaWrap because its success rate during the LAPD trial actually exceeded expectations, given the impact of COVID-19 and the time police departments usually take to adopt new technologies. (Br. 24). As such, Plaintiff has failed to

- 15 -

allege scienter.  *See Nguyen*, 962 F.3d at 408 ("Based on plaintiff's complaint, the more plausible inference is that the company made optimistic statements about its prospects for FDA approval because its U.S. testing looked promising"); *Ronconi v. Larkin*, 253 F.3d 423, 430 (9th Cir. 2001) (affirming dismissal of complaint where no facts were alleged that would "support an inference that the company's more optimistic predictions were known to be false or misleading at that time by the people who made them").

## IV.  <u>PLAINTIFF'S REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED</u>

Plaintiff has requested leave to amend his Amended Complaint for a second time in the event that the motion to dismiss is granted.  Under Federal Rule of Civil Procedure 15(a), leave to amend "shall be freely give[n] when justice so requires," but it is "not granted automatically."  *Edwards v. Leaders in Cmty. Alts., Inc.*, No. 20-cv-15070, 2021 U.S. App. LEXIS 9647, at \*6 (9th Cir. Apr. 2, 2021).  Instead, this Court must consider five factors in determining whether to grant leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint.  *Id.*

Here, the third, fourth and fifth factors weigh heavily in favor of denial.  First, Defendants would be prejudiced if Plaintiff had yet another opportunity to file a complaint, having already spent months reviewing and responding to the allegations in the four complaints filed in this action thus far.  Second, Plaintiff should not be granted leave to amend because further amendment would be futile.  As argued previously, he is unable to plausibly allege loss causation under any set of facts.  *See Curry v. Yelp, Inc.*, 875 F.3d 1219, 1228 (9th Cir. 2017) (affirming lower court decision to dismiss with prejudice where further amendment on loss causation would be futile); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002) (denying leave to amend where flaws in consolidated amended complaint could not

- 16 -

be cured).  No amount of repleading overcome the fact that all relevant information about the BolaWrap trials was available to the market on August 25, 2020, and this Court need not prolong the litigation by permitting further amendment.  *Lipton*, 284 F.3d at 1039; *Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1089 (9th Cir. 2002).  Moreover, the statements relied upon by Plaintiff cannot be construed as false or material, no matter how they are recast, because Rothans' statements are not actionable in any context.

Third, Plaintiff has already amended his Complaint in the case and is not entitled to a third opportunity to replead.  Nearly six months passed between the initiation of this action and the filing of the Amended Complaint, during which time Plaintiff made few, if any changes to the pleadings.  *Compare* ECF Dkt No. 1 and ECF Dkt No. 65.  This Court is wholly within its direction to deny leave to amend where, as here, Plaintiff has had ample time to cure deficiencies in the Complaint, and further amendment is nonetheless futile.  *See, e.g., In re Metawave Communs. Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1092 (W.D. Wa. 2003) (denying leave to amend where "almost six months" elapsed between initiation of securities fraud action and filing of consolidated amended complaint and amendment was determined to be futile).

## V.  <u>CONCLUSION</u>

For the reasons set forth above, and in the Opening Brief, Defendants' motion to dismiss should be granted and Plaintiff's request for leave to amend should be denied.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Respectfully submitted,


Dated:  July 9, 2021                    **BALLARD SPAHR LLP**

By:  */s/ Kahlil C. Williams*
     Scott S. Humphreys
     M. Norman Goldberger (*pro hac vice*)
     Kahlil C. Williams (*pro hac vice*)

     *Attorneys for Defendants*

- 18 -